**United States District Court**
For the Northern District of California

1

2

3

4

5

6            IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9    ENRICO MORETTI, an individual, on behalf
     of himself, the general public and those
10   similarly situated,                          No.  C 13-02972 JSW

11              Plaintiff,              **ORDER GRANTING MOTION TO**
                                       **TRANSFER**
12        v.

13   THE HERTZ CORPORATION; HERTZ
     GLOBAL HOLDINGS, INC.; DOLLAR
14   THRIFTY AUTOMOTIVE GROUP INC.;
     HOTWIRE, INC.; and DOES 1 THROUGH
15   25,

16              Defendants.
                                          /
17

18        Now before the Court is the motion to transfer pursuant to 28 U.S.C. § 1404(a) filed by

19   Defendants Hertz Corporation and Hertz Global Holdings Inc. ("Hertz"), Dollar Thrifty

20   Automotive Group ("Dollar") , and Hotwire Inc. ("Hotwire") (collectively "Defendants").

21   Having carefully reviewed the parties' papers, relevant legal authority, the record in this case,

22   and considered their arguments, the Court hereby GRANTS Defendants' motion to transfer.

23                              **BACKGROUND**

24        Plaintiff, Enrico Moretti ("Plaintiff") filed a Complaint ("Complaint") with four causes of

25   action for violations of: (1) California Business and Professions Code Section 17500; (2)

26   California Civil Code Section 1750; (3) state common and statutory law for fraud, deceit and

27   misrepresentation; and (4) California Business and Professions Code Section 17200.  According

28   to the allegations in the Complaint, which must be taken as true at this procedural posture,

**United States District Court**
For the Northern District of California

1   Defendants advertised a low rental car rate then actually charged Plaintiff a higher rental car rate

2   in Mexico, failed to disclose that insurance purchase is mandatory at the time of rental, and

3   inflated exchange rates at the time of payment.  (*See* Compl. ¶¶ 26, 31, 34.)  Plaintiff resided in

4   California during the alleged incident and all the Defendants were Delaware corporations with

5   principal places of business in New Jersey (Hertz), Oklahoma (Dollar) and California (Hotwire).

6   (*Id.* at ¶¶ 4-8.)

7         "On December 15, 2012, Plaintiff reserved a [car rental from Hertz and Dollar] on the

8   Hotwire website."  (*Id.* at ¶ 34.)  "Hotwire specifically represented to Plaintiff that the fee for

9   renting the selected car type . . . [was] an estimated total cost . . . of $365.23 for the ten-day

10  rental, which included estimated taxes and fees" with a confirmation email to this effect.  (*Id.* at

11  ¶¶ 34, 36.)  Neither Hotwire's website nor the confirmation emails notified Plaintiff "that he

12  would be required to purchase mandatory personal liability insurance from [Hertz and Dollar]."

13  (*Id.*)  Before completing his reservation on Hotwire, Plaintiff had to accept Hotwire's Terms of

14  Use ("Terms of Use").  (Declaration of Sarah Bernard ("Bernard Decl.") ¶¶ 2-3; Declaration of

15  Jacob Aaron Joachin Hadary ("Hadary Decl.") ¶¶ 2-5.)  On December 27, 2012, Plaintiff's

16  scheduled pickup day for his ten-day car rental in San Jose del Cabo Mexico, Hertz and Dollar

17  "converted Plaintiff's daily rate . . . using [Hertz and Dollar] arbitrary currency exchange rate."

18  (*Id.* at ¶¶ 35, 37, 39.)  On January 6, 2013, after Plaintiff returned his rental car to Hertz and

19  Dollar the total cost charged to Plaintiff's credit card totaled $683.59 "which included the daily

20  rental fee for ten days, airport fees, insurance and tax."  (*Id.* at ¶ 39.)  Plaintiff alleges this is a

21  regular business practice for Defendants and similarly situated individuals have been routinely

22  overcharged and misinformed.  (*Id.* at ¶ 41.)

23        Plaintiff filed the Complaint on May 24, 2013 in San Francisco Superior Court.  On July

24  27, 2013, Defendants removed the action to this Court.  On January 2, 2014, Defendants moved

25  to transfer the case pursuant to 28 U.S.C. § 1404(a).

26

27

28

**United States District Court**
For the Northern District of California

**ANALYSIS**

**A.      Applicable Legal Standard.**

Defendants move to transfer this action to the District Court of Delaware.  Pursuant to 28 U.S.C. Section 1404(a), a district court may transfer a civil action to any district where the case could have been filed originally for the convenience of the parties and witnesses and in the interest of justice.  The moving party bears the burden of showing the inconvenience of litigating in this forum favors transfer.  *See Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1088 (N.D. Cal. 2002) (citing *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).  Moreover, the moving party cannot rely on vague generalizations to show the requisite factors weigh in favor of transfer.  *See id.* at 1093.  A district court has broad discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) (internal citations omitted)).

In order for a district court to transfer an action under Section 1404, the court must make the following two findings: (1) the transferee court is one where the action "might have been brought," and (2) the convenience of the parties and witnesses and the interest of justice favor transfer.  *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).  To determine whether the moving party has met its burden under the second prong, the Court considers the following factors: non-moving party's choice of forum; convenience of the parties and witnesses; ease of access to sources of proof; local interest in the controversy; familiarity of each forum with the applicable law; and relative congestion in each forum.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

However, if a motion for transfer is based on a forum-selection clause, the analysis is adjusted in three ways.  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581-82 (2013):

> First, the plaintiff's choice of forum merits no weight, and the [plaintiff] bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted. . . . Second . . . [the] court should not consider arguments about the parties' private interests . . . [the] court [ ] must deem the private-interest factors to

weigh entirely in favor of the preselected forum . . . [and] may consider arguments about public-interest factors only. . . . Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice of law rules – a factor that in some circumstances may affect public-interest considerations. *Id.*

Before the Court engages in the adjusted Section 1404(a) analysis, the Court must first determine whether a valid forum-selection clause exists within the subject contract. *See Chateau des Charmes Wines Ltd. v. Sabate USA Inc.*, 328 F.3d 528, 530 (9th Cir. 2003)  Determining this contractual issue is a two-part inquiry: (1) if the parties agreed to the clause; and (2) if the clause applies to the issue in dispute. *See id.*

**B.      Motion to Transfer.**

   **1.      Forum Selection Clause.**

      **i.      Validity of the Clause.**

Defendants move to transfer this action on the basis that Plaintiff agreed to the Terms of Use containing a forum-selection clause mandating that disputes be resolved in the District of Delaware. When deciding whether the parties agreed to a certain matter, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  Consent is an essential element of any contract, and must be free, mutual and communicated. *See* Cal. Civ. Code §§ 1550, 1565, 1580.  "[T]he forum-selection clause is unenforceable as to any particular plaintiff if the court determines that such plaintiff did not have sufficient notice of the forum-selection clause prior to entering into the contract." *Carnival Cruise Lines, Inc. v. Superior Ct.*, 234 Cal. App. 3d 1019, 1026-27 (1991).  "Absent such notice, the requisite mutual consent to that contractual term is lacking and no valid contract with respect to such clause thus exists." *Id.* at 1027.  "[T]he forum selection clause . . . in an adhesion contract is enforceable even though the [party] did not actually read it as long as the clause provided adequate notice to the defendant that he was agreeing to the jurisdiction cited in the contract." *Hunt v. Super. Ct.*, 81 Cal. App. 4th 901, 908 (2000) (internal citations omitted).  A binding contract is created if a "[p]laintiff [i]s provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the I accept' button and [ ] admittedly clicked 'Accept.'" *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011)  It is sufficient to "requir[e]

United States District Court

For the Northern District of California

1    a user to affirmatively accept the terms, even if the terms are not presented on the same page as the

2    acceptance button" as long as the user has "access to the terms of service."[1]  *Id.*

3           It is undisputed that Plaintiff used the Hotwire website on December 15, 2012 to book his

4    car rental for Mexico.  (*See* Compl. ¶ 34; Hadary Decl. ¶ 7.)  Plaintiff argues that Defendants have

5    not met their burden to demonstrate that he agreed to the forum-selection clause contained in the

6    Terms of Use.  Specifically, Plaintiff alleges that Hotwire may have made a false representation in

7    his access to the Terms of Use and argues that perhaps the hyperlink was not functioning properly

8    at the time Plaintiff made his purchase. (Opp. Br. at 9.) Defendants have produced two declarations

9    from employees at Hotwire: (1) Sarah Bernard who at the operative time was the Vice President of

10    Product Management for Hotwire; and (2) Jacob Aaron Joachin Hadary who was the Lead Product

11    Manager for Hotwire during that time.[2]  (*See* Bernard Decl. ¶ 1; *see* Hadary Decl. ¶ 1.)  Bernard and

12    Hadary affirmatively state that the Terms of Use in operation during the December 2012 time frame

13    included a forum-selection clause.  (*See* Bernard Decl. ¶ 4; Hadary Decl. ¶ 8.)  Hadary declares, and

14    corroborates Bernard's declaration, that an individual using the Hotwire website cannot complete

15    a booking without checking the "Acceptance Box" acknowledging the acceptance of "Hotwire's

16    terms and conditions and other applicable rules."  (Hadary Decl. ¶¶ 2-3.)  Hadary confirms that this

17    requirement has been in place since 2005.  (*See id.* at ¶ 4.) Plaintiff confirms that he completed his

18    booking through the Hotwire website which indicates that he checked the Acceptance Box.  (*See id.*

19    at ¶ 7; *see also* Compl. ¶ 34.)  The language in the Acceptance Box shows that even though the

20    terms were provided by hyperlink Plaintiff acknowledged accepting the "terms of use and

21    Hotwire's" rules.  (Hadary Decl. ¶ 5.)  The Court concludes that, in the absence of an affirmative

22    denial from Plaintiff that he did not in fact check the Acceptance Box and clear evidence that

23    Plaintiff could have not otherwise completed his car reservation, Plaintiff had notice and consented

24

25        [1] "The 'clickwrap' process [is used] to obtain a user's consent to terms of service whereby the terms of service are presented on the screen and do not allow the user to proceed

26    without clicking to assent to the terms." *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910 (N.D. Cal. 2011).  The 'modified clickwrap' process is where the terms of service

27    are not visible on the page but instead are linked by [a] hyperlink [to a different page or area] following the 'Allow' button," where the terms of service are presented. *Id.*

28        [2] Under California Code of Civil Procedure Section 2015.5, declarations under penalty of perjury are a form of evidence allowed in support of a motion for transfer.

5

1   to the Terms of Use containing the forum-selection clause. (*See* Opp. Br. at 9.)  The Court finds that

2   the parties agreed to the forum-selection clause contained in the December 2012 version Terms of

3   Use and it is therefore valid.

4              **ii.**      **Scope of Clause - Dispute.**

5        Second, having established that a valid forum-selection clause exists, the Court must now

6   determine if the dispute at hand falls within the scope of forum-selection clause.  "[T]he scope

7   . . . of a forum selection clause is a matter of contract."  *Polar Shipping Ltd. v. Oriental Shipping*

8   *Corp.*, 680 F.2d 627, 632 (9th Cir. 1982).  "Where the plaintiff has agreed to bring suit in a specific

9   forum, presumably in exchange for other promises from the defendant, the plaintiff has already

10   exercised their privilege to select venue."  *Atl. Marine Constr.*, 134 S. Ct. at 582.  "In agreeing to

11   the clause, the parties waived their right to challenge the preselected forum as inconvenient or less

12   convenient for themselves, or their witnesses, or for their pursuit of the litigation."  *Id.*  "A forum

13   selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a

14   'heavy burden' to establish a ground upon which we will conclude the clause is unenforceable."

15   *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (citing *M/S Bremen v. Zapata Off-Shore*

16   *Co.*, 407 U.S. 1, 17 (1972)).

17        Here, the forum selection clause states that Plaintiff "consents to the exclusive jurisdiction

18   and venue of the courts located in Delaware . . . for all disputes arising out of, or relating to, the

19   Terms and Conditions and use of this site."  (Hertz and Dollar Motion, Ex. A.)  In the Complaint

20   Plaintiff alleges that "[t]his case arises out of Defendants' false advertising of rental cars . . .

21   applying undisclosed, inflated currency exchange rates to the cost of rentals." (*See* Compl. ¶ 1.)

22   Specifically, Plaintiff alleges that "Hotwire partners with rental service providers

23   . . . to market, advertise and sell, via the Hotwire Website, car rental services." (*See id.* at ¶ 23.)

24   Additionally, the Terms of Use state that, "[t]o the extent that you book any travel products or

25   services on this Site . . . you agree that these Terms and Conditions shall apply to all such

26   transactions." (Hertz and Dollar Motion, Ex. A.)  This case arises out of the Terms of Use because

27   Plaintiff booked a car rental for his travel to Mexico through Hotwire's website and obtained the car

28   rental from Hertz and Dollar, a rental service provider advertised on Hotwire's website.  (*See*

**United States District Court**
For the Northern District of California

1   Compl. ¶ 34.)  Therefore, this dispute is within the scope of the Terms of Use forum-selection

2   clause.

3            **iii.     Scope of Clause - Third-Party Beneficiaries.**

4            Hertz and Dollar move to transfer on the basis that they have standing to enforce the forum-

5   selection clause in the Terms of Use.  "[A] range of transaction participants, parties and non-parties,

6   should benefit from and be subject to forum selection clauses."  *Manetti-Farrow, Inc. v. Gucci Am.,*

7   *Inc.*, 858 F.2d 509, 514 n.5 (9th Cir. 1988)  "A third-party qualifies as a beneficiary under a contract

8   if the parties intended to benefit the third party and the terms of the contract make that intent

9   evident."  *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-22 (9th Cir. 1985).

10  "Although the beneficiary need not be named in the contract, he must be a member of a class

11  referred to and identified in it."  *Id.* at 822.  "In the Ninth Circuit, a third-party beneficiary of an

12  agreement is bound by the terms of the agreement, including a valid forum selection clause."  *eBay*

13  *Inc. v. Digital Point Solutions, Inc.*, 608 F. Supp. 2d 1156, 1162 (N.D. Cal. 2009); *see also TAAG*

14  *Linhas Aereas de Angola v. Transamerica Airlines, Inc.*, 915 F.2d 1351, 1354 (9th Cir. 1990) ("it

15  is well-settled contract law that the scope of a third-party beneficiary's rights is defined by the

16  contract . . . a forum selection clause can restrict a third-party beneficiary to the designated forum.").

17  Furthermore, if "the alleged conduct of the non-parties is so closely related to the contractual

18  relationship [ ] the forum selection clause applies to all defendants."  *Manetti-Farrow, Inc.*, 858 F.2d

19  at 514 n.5.

20           It is undisputed that Hertz and Dollar are not signatories to the Terms of Use.  (*See* Hertz and

21  Dollar Motion at 8; *see also* Opp. Br. at 19.)  However, Hertz and Dollar allege that they have

22  standing to enforce the forum selection clause as third-party beneficiaries to the Terms of Use.  (*See*

23  Hertz and Dollar Motion at 9.)  The Terms of Use indicate that the Hotwire website "offers products,

24  services, advice, merchandise and information through [Providers] on an 'as is,' 'as available'

25  basis."  (*See id.*, Ex. A.)  This provides that Providers be considered third-party beneficiaries to the

26  Terms of Use.  Hertz and Dollar fit into the class of Providers because Plaintiff claims that he

27  booked his car rental on the Hotwire website and on December 27, 2012 he picked up his ten-day

28  car rental at Hertz and Dollar's Mexico location.  (See Compl. ¶ 37.)  After Plaintiff returned his car

United States District Court
For the Northern District of California

1   rental on January 6, 2013, Hertz and Dollar charged his credit card $638.59 for the car rental service.

2   (*See id.* at ¶ 39.)  Additionally, the Terms of Use also state that "Hotwire . . . shall not be responsible

3   for any Provider's failure to comply with these Terms and Conditions."  (Hertz and Dollar Motion,

4   Ex. A.)  The parties to this contract intended the Terms of Use to bind Hertz and Dollar by explicitly

5   stating an expectation of compliance by all parties, including providers.  Therefore, Hertz and Dollar

6   are third-party beneficiaries with standing to enforce the forum-selection clause in the Terms of Use.

7   Consequently, the Court does not address Hertz and Dollar's alternate contention that they also have

8   standing to enforce the forum selection clause as non-parties to the Terms of Use.  (*See* Hertz and

9   Dollar Motion at 9.)

10          In sum, the Court finds that the forum selection clause in the Terms of Use is valid and

11   enforceable.

12          **2.      Public Interest Factors.**

13          Defendants move to transfer on the grounds that this case does not present public interest

14   factors in favor of retaining the case in this Court.  Public interest "factors will rarely defeat a

15   transfer motion, the practical result is that forum-selection clauses should control except in unusual

16   cases."  *Atl. Marine Constr.*, 134 S. Ct. at 582.  "Public-interest factors may include 'the

17   administrative difficulties flowing from court congestion; the local interest in having localized

18   controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that

19   is at home with the law.'"  *Id.* at 581 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241,

20   n.6 (1981) (internal quotation marks omitted)).  Because this is not strictly a diversity case, the third

21   factor is not applicable here.[3]  Therefore, the Court will examine the first two factors to determine

22   whether the Plaintiff demonstrates that the "public interest factors overwhelmingly disfavor

23   transfer."  *Id.* at 583.

24

25

26

27          [3] This action was removed from state court to this Court on the basis of federal
    jurisdiction pursuant to the Class Action Fairness Act.  (*See* Docket No. 1.)  Therefore, the
28   Court will discuss the choice-of-law issue, one closely related to this third factor, under
    section 3.

United States District Court
For the Northern District of California

1                          **i.     Court Administrative Difficulties.**

2          Defendants contend that there are no known administrative difficulties flowing from court

3   congestion which would favor this Court over the court in Delaware.  "Administrative difficulties

4   follow for courts when litigation is piled up in congested centers instead of being handled at its

5   origin."  *Gulf Oil Corp.*, 330 U.S. at 508.  In a transfer determination, it is important for the court

6   to consider pendency of another action where consolidation of discovery, convenience of witnesses

7   and parties may have positive effects in case administration.  *A. J. Indus., Inc. v. U.S. Dist. Ct. for*

8   *Cent. Dist. of Cal.*, 503 F.2d 384, 389 (9th Cir. 1974).  "To permit a situation in which two cases

9   involving precisely the same issues are simultaneously pending in different District Courts leads to

10  the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Cont'l Grain*

11  *Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

12         Here, Plaintiff filed this action in the same District as a similar case, *Shahar v. Hotwire Inc,*

13  *et. al,* Case No. C 12-06027 JSW.  On March 13, 2014, Defendants notified the Court that the parties

14  in *Shahar* have signed a stipulation of settlement pending preliminary approval from this Court.

15  (*See* Docket No. 51.)  Defendants state that the stipulated settlement involves a class that does not

16  include Plaintiff or any other classes Plaintiff attempts to represent in this matter.  (*See id.*)  At this

17  juncture, although this action and *Shahar* are related cases, the two matters are in distinctly

18  dissimilar procedural postures.  The Court finds that the judicial economy factor does not weigh in

19  favor of maintaining this action in this District in the face of pending settlement in a related matter.

20                         **ii.     Local Interest in the Litigation.**

21         Defendant moves to transfer on the grounds that because Plaintiff seeks to represent a class

22  of similarly situated persons within the United States, this is not a controversy localized to

23  California.  "The local interest factor . . . determin[es] if the forum in which the lawsuit was filed

24  has its own identifiable interest in the litigation which can justify proceeding in spite of these

25  burdens."  *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1232 (9th Cir. 2011).  "[W]ith

26  this interest factor, we [do not] ask . . . whether another forum also has an interest."  *Tuazon v. R.J.*

27

28

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    *Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006).[4]  When "defendants are not California

2    corporations, California has little interest in keeping the litigation in this state to deter future

3    wrongful conduct."  *Guimei v. Gen. Elec. Co.*, 172 Cal. App. 4th 689, 703 (2009)  "[T]he local

4    interest factor weighs in favor of a California forum where a California plaintiff is suing a California

5    defendant over conduct that took place in the state."  *Carijano*, 643 F.3d at 1233.  A state has

6    personal jurisdiction over a defendant corporation if the corporation is incorporated or has its

7    principal place of business within that state's borders.  *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S.

8    Ct. 2780, 2787 (2011).

9         In this case, there is a California plaintiff, possibly a California defendant, but no proof that

10   the conduct took place in California.  Plaintiff made his reservation on the Hotwire website, at which

11   time he was a resident of California.  (Compl. ¶¶ 4, 34.)  All the Defendants are Delaware

12   corporations with principal places of business in New Jersey (Hertz), Oklahoma (Dollar) and

13   California (Hotwire).  (*Id.* at ¶¶ 5-8.)  Only Hotwire has their principal place of business in

14   California.  (*See id.* at ¶¶ 4, 8.)  California may have an identifiable interest in protecting Plaintiff

15   and in regulating Hotwire's business activity within its boundaries.  *See Carijano*, 643 F.3d at 1232.

16   Although Hotwire's residency weighs slightly in favor of California's interest, this is

17   counterbalanced by the fact that Hotwire is also a Delaware resident just like the other two

18   defendants.  In addition, Plaintiff does not allege that any of the false advertising activities took

19   place in California, but only alleges that Defendants' activities affect the State of California.  (*See

20   id.* at ¶¶ 17-18, 34, 36.)  The lack of evidence that any of the alleged activities actually took place

21   in California weighs against California's interest in regulating Defendants' future business activity

22   within its borders.  *See Carijano*, 643 F.3d at 1233.  Therefore the local interest factor does not favor

23   this forum.

24        This Court concludes that the public interest factors do not outweigh the parties' contractual

25   interests in designating Delaware as the preferred forum for dispute resolution.  *See Atl. Marine*

26

27   _____

28        [4] Because this factor does not require the Court to evaluate the interest of another
     forum, this Court does not address Plaintiff's contention regarding Delaware's lack of
     interest in this litigation.  (*See* Opp. Br. at 19.)

United States District Court

For the Northern District of California

1  *Const. Co., Inc.*, 134 S.Ct. at 583.  The Court finds that the public interest factors do not favor

2  maintaining this action in this District.

### 3.  Choice of Law Rules.

4      The parties dispute whether the District of Delaware has the appropriate expertise to handle

5  this matter because it may involve California law.  Defendant argues that district courts regularly

6  apply state law from different jurisdictions, when a case such as this involves both federal and state

7  law.  There is an exception under a Section 1404(a) to the rule barring a carrying over of the original

8  forum's law to the transferee district.  *See id*. at 582.  The Supreme Court "deemed that exception

9  necessary to prevent 'defendants, properly subjected to suit in the transferor State,' from 'invok[ing]

10  § 1404(a) to gain the benefits of the laws of another jurisdiction.'"  *Id.* (quoting *Van Dusen v.*

11  *Barrack*, 376 U.S. 612, 638 (1964)).  "[A] plaintiff who files suit in violation of a forum-selection

12  clause enjoys no such 'privilege' with respect to its choice of forum, and therefore it is entitled to

13  no concomitant 'state-law advantages.'"  *Id.* at 583.  It would "be inequitable to allow the plaintiff

14  to fasten its choice of substantive law to the venue transfer."  *Id.*  The transferee court should "not

15  apply the *Van Dusen* rule when a transfer stems from enforcement of a forum-selection clause"

16  because "the parties waived their right" to enforce other state laws besides those named in the

17  forum-selection clause.  *Id.*  However, it is against public policy for a defendant to include a choice

18  of law provision in order "to insulate itself from liability against all statutory [based] claims, except

19  perhaps those brought by Delaware residents."  *Millett v. Truelink, Inc.*, 2006 WL 2583100, at*4

20  (D. Del. Sept. 7, 2006).  In such a case, the Delaware Court allowed the claims to proceed under the

21  Plaintiff's chosen forum state's law.  *Id.*

22      Here, all of Plaintiff's causes of action arise out of California law.  Plaintiff admits that

23  California law governs this action despite the choice-of-law rule mandating Delaware law.  (*See*

24  Opp. Br. at 18; *see* Hertz and Dollar Motion at Ex. A.)  Plaintiff further argues that because all the

25  claims are based on California law it is in the public's interest for this action to remain in the "forum

26  that is at home with the law.'"  *Atl. Marine Constr.*, 134 S. Ct. at 581 n.6.  This action was removed

27  from state court to this Court on the basis of the Class Action Fairness Act.  (*See* Docket No. 1.)

28

1    Although this Court may be more familiar with the relevant law, there is nothing to indicate that the

2    District of Delaware cannot adequately apply California law.

3                                 **CONCLUSION**

4         For the reasons stated herein, Defendants' motion to transfer is GRANTED.  The Clerk

5    shall close this file and transfer this action to the District Court of Delaware forthwith.

6         **IT IS SO ORDERED.**

7

8    Dated: April 11, 2014

                                         _____

9                                        JEFFREY S. WHITE
                                       UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

12