IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ENRICO MORETTI, individually and on :
behalf of Class Members, :
 :
       Plaintiffs, :
 :
v. : Civ. No. 14-469-LPS
 :
THE HERTZ CORPORATION; DOLLAR :
THRIFTY AUTOMOTIVE GROUP, INC.; :
and HOTWIRE, INC., :
 :
       Defendants. :

---

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE.

Adam J. Gutride, Seth A. Safier, and Marie A. McCrary, GUTRIDE SAFIER LLP, San Francisco, CA.

    Attorneys for Plaintiff Enrico Moretti.


Raymond J. DiCamillo and Susan M. Hannigan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.

Ross B. Bricker, John F. Ward, Jr., and Jeffrey A. Koppy, JENNER & BLOCK LLP, Chicago, IL.

    Attorneys for Defendants The Hertz Corporation and Dollar Thrifty Automotive Group, Inc.


**MEMORANDUM OPINION**

March 23, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Enrico Moretti ("Plaintiff"), individually and on behalf of putative class members, filed this action against defendants The Hertz Corporation ("Hertz Corporation"), Hertz Global Holdings, Inc. ("Hertz Global"), Dollar Thrifty Automotive Group, Inc. ("DTAG"), Hotwire, Inc. ("Hotwire"), and Does 1 Through 25 ("Unnamed Defendants") on May 24, 2013 in the Superior Court of California, alleging violations of the California Business and Professions Code §§ 17200, *et seq.* & 17500, *et seq.*; and the Consumers Legal Remedies Act, § 1750, *et seq.*; as well as fraud, deceit, and/or misrepresentations under common and statutory law. (D.I. 1 at 12, 32-40) On June 27, 2013, the action was removed to the Northern District of California, based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) & d(5). On April 15, 2014, the action was transferred to the District of Delaware. (D.I. 55) Motions to dismiss were filed on May 15, 2014 by Hotwire (D.I. 63) and by Hertz Corporation, Hertz Global, and DTAG (D.I. 65). In response, on June 2, 2014, Plaintiff mooted the motions by filing a First Amended Complaint ("Complaint"), now listing only Hertz Corporation, DTAG, and Hotwire as defendants. (D.I. 69)

On June 19, 2014, Hertz Corporation and DTAG (collectively, "Defendants") filed the pending Motion to Dismiss for Lack of Jurisdiction over the Subject Matter Plaintiff's First Amended Complaint as Against the Hertz Corporation and DTAG Pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the Alternative, Motion for More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e). (D.I. 71) In addition to opposing Defendants' motion, Plaintiff has requested the opportunity to conduct jurisdictional discovery or to file a Second

1

Amended Complaint. (*See* D.I. 74 at 8-9 nn.1-2) Briefing on the pending motion was completed on July 17, 2014 (D.I. 72, 74, 75) and the Court heard oral argument on March 18, 2015 (*see* Transcript ("Tr.")).

For the reasons that follow, the Court will permit Plaintiff to file a Second Amended Complaint, deny without prejudice to renew Defendants' motion to dismiss, grant Defendants' alternative motion for a more definite statement, and deny Plaintiff's request for jurisdictional discovery.

## II. BACKGROUND

Hertz Corporation is a leading car rental business that operates through the brand names "Hertz," "Dollar Rent-A-Car," "Thrifty Car Rental," and "Firefly." (D.I. 69 at ¶ 18) Dollar Thrifty ("DTAG") is a car rental business that was acquired by and became a wholly-owned subsidiary of Hertz on November 19, 2012. (*Id.* at ¶ 6) Plaintiff alleges that "[a]t all times alleged in this Class Action Complaint, . . . each of the Defendants was an agent, servant, representative, officer, director, partner or employee of the other Defendants," and that "each of them, were members of, and engaged in, a joint venture, partnership and common enterprise." (*Id.* at ¶¶ 9-10)

Hertz Corporation's 2013 Annual Report stated: "Each of our brands generally maintains separate airport counters, reservations and reservation systems, marketing and all other customer contact activities, however *a single management team manages all four brands*." (*Id.* at ¶ 19) (emphasis added) Accordingly, Plaintiff alleges:

> Hertz Corporation has integrated the Hertz, Dollar and Thrifty
> brands though combined marketing, promotion, reservation, fleet
> management, insurance, information technology functions, back

2

> office processing and procurement. All domestic and international reservation[s] for all Hertz brands are processed in a Hertz facility in Oklahoma City, Oklahoma. Thus, although Dollar Thrifty is a subsidiary of Hertz Corporation, the actual operations pertinent to the Dollar and Thrifty brands are managed and performed by Hertz Corporation.

(*Id.* at ¶ 20 (further stating that "[f]or the remainder of this complaint, Hertz Corporation and Dollar Thrifty are referred to collectively herein as "Hertz")) At the hearing, Plaintiff clarified that he alleges Hertz Corporation is responsible for setting the relevant policies, and DTAG and the other Hertz Corporation brands are responsible for implementing and enforcing these policies. (*See* Tr. at 20:15-23, 21:14-25, 23:16-25:1, 25:17-21, 27:1-28:1, 30:9-31:2, 31:18-32:5, 33:12-34:5, 35:2-13, 37:6-17, 38:2-8)

Hertz Corporation conducts some of its operations through franchisees which are managed by Hertz Corporation and share a percentage of revenues with Hertz Corporation. (*See id.* at ¶ 21) Hertz Corporation also owns and operates several websites ("the Hertz Websites"), through which it accepts rental reservations and provides information about daily rental rates, fees and taxes, and rental policies. (*See id.* at ¶¶ 22-23) Additionally, Hertz Corporation accepts reservations through third party websites ("the Travel Websites") which link directly to Hertz Websites to provide consumers with additional information contained therein. (*See id.* at ¶ 24)

Hotwire owns and operates one of the Travel Websites, www.hotwire.com ("the Hotwire Website"), which provides information obtained from Hertz Corporation about daily rental rates, fees and taxes, and rental policies, as well as Hotwire Website rules, regulations, disclaimers, and disclosures. (*Id.* at ¶ 25) Plaintiff alleges that through its "agency" business model, Hotwire provides users with information about Hertz Corporation's rental rates and terms, takes the

3

customer's reservation, provides the reservation information to Hertz Corporation, and then is provided a percentage of revenue actually collected by Hertz Corporation as well as an accounting of services actually provided. (*See id.* at ¶¶ 26-28) According to Plaintiff, "Hertz monitors the information that Hotwire provides to customers regarding Hertz car rentals to ensure that Hotwire is accurately presenting the information that Hertz provided, and accordingly, has knowledge of all the representations that Hotwire makes to customers regarding the Hertz rentals." (*Id.* at ¶ 28)

On December 15, 2012, Plaintiff used the Hotwire Website to reserve a Thrifty-branded car which was advertised at a rate of $29.91 per day, for a total estimated cost of $365.23. (D.I. 69 at ¶ 44) Plaintiff alleges that at this time, "Defendants represented to Plaintiff that the purchase of insurance was optional." (*Id.*) Plaintiff received two confirmation emails that did not disclose anything about additional charges. (*Id.* at ¶ 46) However, when Plaintiff went to pick up his rental car at his chosen Thrifty location in Mexico and attempted to decline purchase of personal liability insurance – explaining that he had his own – the counter agent told Plaintiff that purchase of personal liability insurance for $12 per day was required in order to rent the car. (*Id.* at ¶ 48) Additionally, unbeknownst to Plaintiff, the daily rate he was charged was converted to Mexican currency at a rate of 13.99 Mexican pesos per U.S. dollar, about 12% above the official exchange rate of 12.76 Mexican pesos per U.S. dollar at the time. (*Id.* at ¶¶ 47, 49) When Plaintiff returned the car at the end of the ten-day rental period, his credit card was charged a total of 9,563,43 Mexican pesos – including "other fees charged by Defendants" – which ultimately appeared on his credit card as a charge of $683.59 (after being converted back to dollars at the official exchange rate). (*Id.* at ¶ 49 & n.5)

4

Plaintiff alleges that he later employed an investigator, who had a similar experience. That is, the investigator: (1) was required to purchase personal liability insurance despite providing written proof of personal liability insurance, applicable in Mexico and covering the type of car being rented; and (2) was subjected to the additional exchange rate and insurance charges despite paying for the reservation in advance. (*See id.* at ¶¶ 60-68) Other consumers have publicly reported similar experiences. (*See id.* at ¶¶ 52-59) Accordingly, the First Amended Complaint alleges that Defendants systematically operate an exchange rate scam and an insurance rate scam that results in customers having to pay more than expected for their car rentals. (*See id.* at ¶¶ 35-43)

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

"Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim." *Samsung Elec. Co., Ltd. v. ON Semiconductor Corp.*, 541 F.Supp.2d 645, 648 (D. Del. 2008). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction may present either a facial attack or a factual attack. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008); Fed. R. Civ. P. 12(b)(1). A facial attack concerns an alleged pleading deficiency, while a factual attack concerns the failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites. *See CNA*, 535 F.3d at 139.

Where, as here, the motion presents a facial challenge to the Court's jurisdiction, or one based purely on the allegations in the complaint, the Court must accept well-pled factual allegations as true and may consider only the complaint and any documents upon which it is

5

based. *See Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006). A motion to dismiss for lack of standing falls into this category. *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." ) (internal quotation marks and citation omitted). Where subject matter jurisdiction is challenged based upon the sufficiency of jurisdictional facts, the Court is not required to attach any presumptive truthfulness to the allegations in the complaint and may consider matters outside the pleadings to satisfy itself that it has jurisdiction. *See id.*; *see also Carpet Group Int'l v. Oriental Rug Importers Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). In either case, the plaintiff bears the burden of persuasion. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### B.  Rule 12(e)

Federal Rule of Civil Procedure 12(e) allows a party to move for a more definite statement when a pleading is "so vague or ambiguous that the party cannot reasonably be required to frame a responsive pleading." *Schaedler v. Reading Eagle Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967). "The decision whether to grant or deny a defendant's motion for a more definite statement rests within the sound discretion of the court." *Holmes v. Colonial Sch. Dist.*, 2010 WL 4918721, at *1 (D. Del. Nov. 24, 2010). Motions for a more definite statement are generally viewed with disfavor, particularly "where the information sought by the motion could

6

easily be obtained by discovery." *CFMT, Inc. v. YieldUp Intern. Corp.*, 1996 WL 33140642, at
*1 (D. Del. Apr. 5, 1996).

## IV. DISCUSSION

### A. Motion to Dismiss

Defendants move for dismissal of the Complaint for lack of Article III standing. Article III standing requires a showing of: (1) injury in fact, (2) fair traceability of the injury to the defendant's conduct, and (3) redressability of the injury. *See, e.g., Ballentine*, 486 F.3d at 814. In the majority of his Complaint, Plaintiff refers to Defendants collectively as "Hertz," apparently based on his allegations of integrated operations or centralized management. (*See* D.I. 69 at ¶ 20) Plaintiff argues that his allegations are sufficient to establish that he has standing against Defendants based on either a theory of direct liability or an agency theory, the latter of which requires "attribut[ion] [of] specific acts to the parent because of the parent's authorization of those acts." *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998); *see also* Tr. at 33:2-7.

Defendants contest standing on two separate bases, both of which relate to Plaintiff's obligation to identify an injury fairly traceable to Defendants. First, Defendants argue that Plaintiff has no standing to sue Hertz Corporation because Plaintiff has not made any allegations that are actually traceable to Hertz Corporation, but rather improperly relies solely on the parent-subsidiary relationship between Hertz Corporation and DTAG. Second, Defendants argue that Plaintiff has no standing to sue *either* Hertz Corporation or DTAG because Plaintiff, by referring to Defendants collectively as "Hertz," fails to identify which injuries are specifically traceable to each party. The Court addresses both of these grounds for each Defendant below.

7

### 1.  Hertz Corporation

Plaintiff alleges that Hertz Corporation is responsible for the policies and upper-level management of operations related to the exchange rate and insurance rate scams he was subjected to when he rented a Thrifty-branded car. (*See* Tr. at 20:15-23, 21:14-25, 23:16-25:1, 25:17-21, 27:1-28:1, 30:9-31:2, 31:18-32:5, 33:12-34:5, 35:2-13, 37:6-17, 38:2-8) Plaintiff finds support for this allegation in Hertz Corporation's 2013 Annual Report's statement that "a single management team manages all four brands." (*See* D.I. 69 at ¶ 19; *see also* Tr. at 24:10-15, 30:9-14, 34:1-5) Defendants point out that this report was published more than a year after Plaintiff's rental transaction (*see* D.I. 69 at ¶ 18) and argue, therefore, it cannot support Plaintiff's standing. However, at this stage of the proceedings the Court must construe all facts in favor of Plaintiff. Doing so, the Court does not find it implausible to infer that a single management team was imposing the pertinent policies on DTAG at the time of Plaintiff's transaction, in December 2012. Hertz's acquisition of DTAG had occurred a month earlier, in November 2012 (*see id.* at ¶ 6; *see also* Tr. at 25:14-21), and the fact (alleged and taken as true) that by sometime in 2013 "a single management team manage[d] all four brands" makes it permissible to infer this was also the fact in December 2012.

Moreover, the Court is required to take the following allegations as true:

> Hertz Corporation has integrated the Hertz, Dollar and Thrifty brands though combined marketing, promotion, reservation, fleet management, insurance, information technology functions, back office processing and procurement. All domestic and international reservation[s] for all Hertz brands are processed in a Hertz facility in Oklahoma City, Oklahoma. Thus, although Dollar Thrifty is a subsidiary of Hertz Corporation, the actual operations pertinent to the Dollar and Thrifty brands are managed and performed by Hertz Corporation.

8

(D.I. 69 at ¶ 20)

Hence, at this time, the Court has no basis to dismiss Hertz Corporation.[1]

### 2. Dollar Thrifty Automotive Group

Plaintiff alleges that DTAG implements and enforces the policies made by Hertz Corporation. (*See* Tr. at 20:15-23, 21:14-25, 31:18-21, 33:15-17, 35:2-13, 37:6-17) This, along with the more specific factual allegations as to how Plaintiff rented a Thrifty-branded car from a Thrifty location in Mexico (*see* D.I. 69 at ¶¶ 44-45, 47-48), and was allegedly overcharged, supports a reasonable inference that his injury can be fairly traced to DTAG. Accordingly, at this time the Court has no basis to dismiss DTAG.

### B. More Definite Statement

As an alternative to dismissal, Defendants move for a more definite statement pursuant to Rule 12(e), contending that Plaintiff has failed to meet the heightened pleading requirements for fraud under Federal Rule of Civil Procedure 9(b). Relief may be granted under Rule 12(e) where "the pleading has failed to satisfy the heightened pleading requirements of Rule 9(b)." *Martek Biosciences Corp. v. Nutrinova Inc.*, 2004 WL 2297870, at *2-3 (D. Del. Oct. 8, 2004). "Plaintiff's California consumer protection claims sound in fraud and must meet the heightened pleading requirements of Rule 9(b)." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). To meet these heightened pleading requirements, "the complaint must plead with particularity by

---

[1] At the hearing, Defendants argued that Hertz Corporation is in this case because Plaintiff intends to pursue unwarranted and unduly burdensome discovery from it. (*See, e.g.*, Tr. at 41:4-17) Defendants' concern is not a reason to dismiss the case. The Court will address any discovery disputes through its standard discovery matters procedures.

9

specifying the allegations of fraud applying to each defendant." *Everwine v. A.I. Dupont Hosp. for Children of Nemours Found.*, 2005 WL 3150275, at *2 (E.D. Pa. Nov. 22, 2005).

Plaintiff's use of "Hertz" to refer collectively to both Hertz Corporation and DTAG fails to clearly articulate his theory that ***Hertz Corporation alone*** is responsible for the relevant policies and that DTAG (among others) implements and enforces those policies. (*See* Tr. at 41:21-25) Plaintiff made his theory clear at the recent hearing, but Defendants are entitled to a ***pleading*** that makes the allegations sufficiently clear that they can frame a responsive pleading. It is not clear from the Complaint that Plaintiff is ***not*** alleging that DTAG is responsible for setting the policies on which the alleged scams are based.[2] This pleading deficiency cannot be addressed by discovery. Instead, Plaintiff must provide a more definite statement.

Accordingly, the Court will grant Defendants' motion for a more definite statement. The Court will also grant Plaintiff's request for leave to file a Second Amended Complaint.

## C.  Jurisdictional Discovery

Given the Court's conclusions, there is neither need nor basis for Plaintiff to take jurisdictional discovery.

---

[2]While Plaintiff's clarified theory may be inconsistent with the alternative theory that Hertz Corporation is an agent of DTAG (*see* Tr. at 31:3-32:23), such an inconsistency is not argued to be a basis for dismissal at this time.

10

## V.  CONCLUSION

For the above reasons, the Court will grant Plaintiff leave to file a Second Amended Complaint, deny Defendants' motion to dismiss without prejudice to renew after Plaintiff has filed a Second Amended Complaint, grant Defendants' alternative motion for a more definite statement, and deny Plaintiff's request for jurisdictional discovery.  An appropriate Order will be entered.