IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENRICO MORETTI, individually and on : 
behalf of Class Members, :
:
      Plaintiffs, :
:
v. : Civ. No. 14-469-LPS
:
THE HERTZ CORPORATION, DOLLAR :
THRIFTY AUTOMOTIVE GROUP, INC., :
and HOTWIRE, INC., :
:
      Defendants. :

---

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE

Adam J. Gutride, Seth A. Safier, and Marie A. McCrary, GUTRIDE SAFIER LLP, San Francisco, CA

    Attorneys for Plaintiff Enrico Moretti.


Raymond J. DiCamillo and Susan M. Hannigan, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE

John F. Ward, Jr., JENNER & BLOCK LLP, Chicago, IL

Jessica Ring Amunson, JENNER & BLOCK LLP, Washington, DC

    Attorneys for Defendants The Hertz Corporation and Dollar Thrifty Automotive Group, Inc.


**MEMORANDUM OPINION**


March 29, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Enrico Moretti ("Plaintiff"), individually and on behalf of putative class members, filed this action against defendants The Hertz Corporation ("Hertz Corporation"), Hertz Global Holdings, Inc. ("Hertz Global"), Dollar Thrifty Automotive Group, Inc. ("DTAG"), Hotwire, Inc. ("Hotwire"), and Does 1 Through 25 ("Unnamed Defendants") on May 24, 2013 in the Superior Court of California, alleging violations of the California Business and Professions Code §§ 17200, *et seq.* & 17500, *et seq.*; and the Consumers Legal Remedies Act, § 1750, *et seq.*; as well as fraud, deceit, and/or misrepresentations under common and statutory law. (D.I. 1 at 12, 32-41) On June 27, 2013, the action was removed to the Northern District of California pursuant to federal diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) & d(5). On April 15, 2014, the action was transferred to the District of Delaware from the Northern District of California. (D.I. 54, 55)

Motions to dismiss were filed in this Court on May 16, 2014, by Hotwire (D.I. 63) as well as Hertz Corporation, Hertz Global, and DTAG (D.I. 65). In response to these motions, Plaintiff filed a First Amended Complaint on June 2, 2014, listing only DTAG, Hertz Corporation, and Hotwire as defendants. (D.I. 69) On June 19, 2014, Hertz Corporation and DTAG (collectively, "Defendants") filed a Motion to Dismiss for Lack of Jurisdiction Over the Subject Matter Plaintiff's First Amended Complaint as Against The Hertz Corporation and Dollar Thrifty Pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1) Motion to Dismiss"), Or, In the Alternative, Motion for More Definite Statement Pursuant to Federal Rule of Civil Procedure 12(e) ("Motion for a More Definite Statement"). (D.I. 71) On March 23, 2015, the Court denied

Defendants' Rule 12(b)(1) Motion to Dismiss without prejudice to renew after Plaintiff files his Second Amended Complaint ("SAC") and granted Defendants' Motion for a More Definite Statement. (D.I. 80, 81) On April 10, 2015, Plaintiff filed his SAC. (D.I. 83)

Presently before the Court is Defendants' Motion to Dismiss the SAC for Failure to Join a Party ("Rule 12(b)(7) Motion to Dismiss"). (D.I. 87) Briefing on the Rule 12(b)(7) Motion to Dismiss was completed on May 29, 2015. (D.I. 89, 90, 91) For the reasons that follow, the Court will deny the Rule 12(b)(7) Motion to Dismiss.

## II. BACKGROUND

Hertz Corporation is a leading car rental business that operates through various websites under the brand names "Hertz," "Dollar Rent-A-Car," "Thrifty Car Rental," and "Firefly" ("Hertz Websites"). (D.I. 83 at ¶¶ 18, 22) Dollar Thrifty ("DTAG") is a car rental business that was acquired by and became a wholly-owned subsidiary of Hertz on November 19, 2012. (*Id.* at ¶ 19) Hertz Corporation conducts some of its operations through franchisees which are managed by Hertz Corporation and share a percentage of revenues with Hertz Corporation. (*Id.* at ¶ 21) Hertz Corporation accepts reservations through third-party websites ("the Travel Websites") which link directly to Hertz Websites to provide consumers with additional information contained therein. (*Id.* at ¶ 24) Hotwire owns and operates one of the Travel Websites, www.hotwire.com ("the Hotwire Website"), which provides information obtained from Hertz Corporation about daily rental rates, fees, taxes, and customer service information. (*Id.* at ¶ 25) Plaintiff alleges that "[a]t all times alleged in this Class Action Complaint, . . . each of the Defendants was an agent, servant, representative, officer, director, partner or employee of the

other Defendants," and that "each of them, were members of, and engaged in, a joint venture, partnership and common enterprise." (*Id.* at ¶¶ 9-10)

On December 15, 2012, Plaintiff used the Hotwire Website to reserve a Thrifty-branded car which was advertised at a rate of $29.91 per day, for a total estimated cost of $365.23. (*Id.* at ¶¶ 46-47) Plaintiff alleges that at this time, "Defendants represented to Plaintiff that the purchase of insurance was optional." (*Id.* at ¶ 47) Plaintiff received two confirmation emails that did not disclose anything about additional charges. (*Id.* at ¶ 48) When Plaintiff went to pick up his rental car at the Thrifty location in Mexico, operated by DTAG's Mexican licensee Garpa Arrenda S.A. ("Garpa") (*see* D.I. 1, Ex. 1 at 46 ¶ 5), he attempted to decline purchase of personal liability insurance, explaining that he had his own, but the Garpa counter agent told Plaintiff that purchase of personal liability insurance for $12 per day was required in order to rent the car. (D.I. 83 at ¶ 50) Additionally, allegedly unbeknownst to Plaintiff, the daily rate was charged in Mexican currency "converted . . . using Hertz's arbitrary currency exchange rate of $13.99 MXN [Mexican pesos] per $1 USD," increasing the daily rate Plaintiff ultimately paid by approximately 12%. (*Id.* at ¶¶ 49, 51) Plaintiff alleges that when he returned the rental car at the end of the ten-day rental period, his credit card was charged a total of 9,563.43 Mexican pesos, which his credit card converted to $683.59 using the official exchange rate. (*Id.* at ¶ 51)

Plaintiff alleges that his investigator had a similar experience, in particular: (1) the investigator was also required to purchase personal liability insurance despite providing written proof of personal liability insurance, applicable in Mexico and covering the type of car being rented; and (2) the investigator was subjected to the additional exchange rate and insurance charges as Plaintiff, despite paying for the reservation in advance. (*See id.* at ¶¶ 62-70) Several

other consumers have publicly reported similar experiences. (*See id.* at ¶¶ 54-61) Accordingly, the SAC alleges that Defendants engage in misleading and deceptive advertising and marketing practices as well as unfair trade practices by failing to disclose an "exchange rate scam" and an "insurance rate scam" that results in customers having to pay more than expected for their car rentals. (*See, e.g., id.* at ¶¶ 37-45, 88, 89, 114)

### III.  LEGAL STANDARDS

Pursuant to Fed. R. Civ. P. 12(b)(7), a party may seek dismissal for failure to join a party under Fed. R. Civ. P. 19. In deciding whether to grant such a dismissal, the Court must first determine whether the party is a necessary party under Rule 19(a). *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). A party is necessary if, in the absence of the party, (1) complete relief cannot be afforded to the present parties, (2) the disposition of the action would impair the party's ability to protect its own interest, or (3) any of the present parties would be subject to a substantial risk of multiple or inconsistent obligations. *See* Fed. R. Civ. P. 19(a). If the party is necessary under Rule 19(a), the party must be joined, if joinder is feasible. If joinder is necessary, but infeasible, the Court must then determine whether the party is "indispensable" under Rule 19(b). This inquiry requires a balancing of the interests of the plaintiff, the defendant, the absent party, the courts, and the public. *See Feriozzi Co. v. Ashworks, Inc.*, 130 F. App'x 535, 538-39 (3d Cir. 2005) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109-11 (1968)). If an absent party is indispensable, the Court must dismiss the action. *See Gen. Refractories Co.*, 500 F.3d at 312. The movant bears the burden of establishing that dismissal is appropriate based on the failure to join an indispensable party.

Successive Rule 12(b) motions are governed by Federal Rule of Civil Procedure 12(g)(2). Pursuant to Rule 12(g)(2),

> Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

Fed. R. Civ. P. 12(g)(2). Thus, "Rule 12(g) requires a party who raises a defense by motion prior to an answer raise all such possible defenses in a single motion." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 720 (3d Cir. 1982); *see also Negron v. Sch. Dist. of Phila.*, 994 F. Supp. 2d 663, 666-67 (E.D. Pa. 2014) ("Accordingly, because the Pennsylvania constitutional claim in count I was available to the School District when it filed its first motion to dismiss and because Negron's amended complaint did not alter any of the factual allegations relevant to the constitutional claim, the School District is barred from raising its objection in the current motion to dismiss. However, because Negron's amended complaint supplements the factual allegations regarding the CHRIA claim, the School District is not barred from raising new defenses and objections to that claim."). If a defense pursuant to Rule 12(b)(7) is not brought in the initial motion to dismiss, then Rule 12(h) provides it may be subsequently brought only in the form of a pleading (such as an answer) pursuant to Rule 7(a), a motion for judgment on the pleadings pursuant to Rule 12(c), or at trial on the merits. *See* Fed. R. Civ. P. 12(h)(2).

### IV.  DISCUSSION

The Court agrees with Plaintiff that Defendants have waived their right to raise their Rule 12(b)(7) defense by failing to include it in their previous motions to dismiss under Rule 12(b). (*See* D.I. 17, 71) Defendants contend that their defense under Rule 12(b)(7) was not available

until Plaintiff filed the SAC after the Court – in addition to denying Defendants' Rule 12(b)(1) Motion to Dismiss – granted Defendants' alternative Motion for a More Definite Statement. (D.I. 80, 81) According to Defendants, until the SAC "clarif[ied] for the first time which Defendants purportedly performed which roles with respect to the alleged 'currency scam' and 'insurance scam,'" Defendants "could not know whether it was necessary to join The Hertz Corporation's licensee, Dollar Thrifty's licensee, neither licensee, or both licensees." (D.I. 91 at 2-3)

Yet Defendants' own Notice of Removal included a Declaration of Brad Boyle in Support of Removal to Federal Court (hereinafter "Declaration"), which stated:

> 5. In Mexico, DTAG itself operates no rental car services. Instead, through its subsidiaries, DTAG has licensed the Dollar and Thrifty brand names to a Mexican licensee, Garpa Arrenda, S.A. ("Garpa"), which is a Mexican corporation. Garpa and DTAG are separate corporate entities and maintain separate books and records. DTAG has no direct control over the books and records maintained by Garpa, including records of completed car rental bookings and billings in Mexico.
>
> 6. Garpa and DTAG do have a contractual arrangement under which DTAG accepts reservations on its websites and through "aggregators" (such as Hotwire) for Dollar and Thrifty rental cars in Mexico. DTAG forwards those reservations to the Mexican licensee in exchange for a fee. DTAG maintains this reservation information for Mexican rentals for a period of time in its Reservation Management System.

(D.I. 1, Ex. 1 at 46 ¶ 5) In light of this Declaration, Defendants cannot now claim that they were unaware of the Garpa's role in the factual allegations until they received the SAC. As their own Declaration demonstrates, Defendants have had sufficient knowledge about Garpa's role in Plaintiff's allegations since at least the time they removed this case to federal court on June 27,

6

2013. (*See id.*) Nevertheless, because Defendants may raise the merits of their Rule 12(b)(7) defense in a later pleading, to promote judicial efficiency the Court will proceed to address them.

First, the Court considers whether Garpa is a "necessary" party for any of the three reasons provided in Rule 19(a). With regard to the first reason, incompleteness of relief, the Court must evaluate each of Plaintiff's claims and his ability to recover upon them. *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 686-87 (D. Del. 2010). "Completeness is determined on the basis of those persons who are already parties, and not as between a party and an absent person whose joinder is sought." *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996).

Here, the Court can grant complete relief on each of Plaintiff's claims without Garpa being a party because "the allegations involve claims all based upon [the named Defendants'] misrepresentations and Plaintiff has not alleged any wrongdoing on the part[] of the non-joined signatory." *Bye v. Nationwide Mut. Ins. Co.*, 2008 WL 3200308, at *6 (E.D. Mich. Aug. 5, 2008). Importantly, "[e]ven if [Garpa] may be in part liable for the negligent misrepresentations of [Defendants], . . . joint tortfeasors are not necessary parties under Rule 19(a)." *Kuhn*, 723 F. Supp. 2d at 687. Contrary to Defendants' view, Garpa is not a necessary party for the Court to grant relief on Plaintiff's claim for an injunction because Plaintiff only seeks an injunction to prohibit **Defendants**, **not** Garpa, from engaging in false, misleading, and deceptive advertising and marketing practices as well as unfair trade practices. (*See* D.I. 83 at ¶¶ 88, 89, 114) Rather than requiring Garpa to change any of its business practices, injunctive relief would require Defendants to adequately disclose to customers "during the reservations process the rates and charges applicable to rentals in Mexico." (D.I. 90 at 11 n.5)

The second and third reasons for being a necessary party under Rule 19(a) – the third party's ability to protect its interests or whether an existing party will be subject to a substantial risk of incurring multiple or inconsistent obligations – require that the third party "claim[] an interest relating to the subject of the action . . . and, where there is no showing that the absent party actually has claimed an interest relating to the subject of the action, the court may deny a motion to dismiss." *Kuhn*, 723 F. Supp. 2d at 692 (alterations in original; internal quotation marks omitted); *see also Utility Lines Const. Servs. Inc. v. HOTI, Inc.*, 799 F. Supp. 2d 331, 340 (D. Del. 2011); *Bayer Cropscience AG v. Dow Agrosciences LLC*, 288 F.R.D. 84, 88 (D. Del. 2012); *Bye*, 2008 WL 3200308, at *6.

Garpa has not claimed an interest in this litigation. Only Defendants have claimed that Garpa has an interest in being joined, arguing that Garpa was an "active participant in the events," including entering into contracts with both Plaintiff and DTAG. (*See* D.I. 89 at 12-13; D.I. 91 at 4-6) Yet Plaintiff does not assert any wrongdoing on the part of Garpa, which distinguishes this case from cases such as *In re Toyota Motor Corp.*, in which the necessary parties – ***not*** the named parties – were the active participants in part of the alleged wrongdoing. 785 F. Supp. 2d 883, 906 (C.D. Cal. 2001) ("If Plaintiffs prevail, they cannot obtain complete relief against the Defendants, including TMC, because their claims seek to hold the Toyota Defendants liable, in part, for the actions of unnamed subsidiaries and/or sister companies."). This case is also distinguishable from others in which contracting parties were found to be necessary parties, *see Chadwick v. Arabian Am. Oil Co.*, 656 F. Supp. 857, 862 (D. Del. 1987); *NCR Corp. v. BB 2009 Trust*, 2012 WL 440744, at *3-4 (D. Del. Feb. 9, 2012); *Amboy Bancorp. v. Jenkens & Gilchrist*, 2007 WL 2688885, at *2 (D.N.J. Sept. 12, 2007), as Plaintiff does not

8

allege breach of his rental contract or any other contract, but rather that Defendants misled him into pursuing the rental contract in the first place. To the extent that "[p]roof of the terms of Plaintiff's rental contract with Garpa, particularly the terms regarding insurance and currency conversion, is necessary to demonstrate how, if at all, those terms differed from the terms allegedly presented by Hotwire, Inc., The Hertz Corporation, and Dollar Thrifty at the reservation stage" (D.I. 91 at 6), these issues can be addressed through established procedures for third-party discovery.[1]

Finally, as Defendants concede, Garpa's indemnification of Dollar Thrifty for any liability arising out of Garpa's actions is insufficient to render Garpa a necessary party. *See Gen. Refractories Co.*, 500 F.3d at 318-19. Because Garpa's joinder is not required by either Rule 19(a)(1)(A) or (B), the Court concludes that Garpa is not a necessary party to this litigation.

## IV. CONCLUSION

For the above reasons, the Court will deny Defendants' Rule 12(b)(7) Motion to Dismiss. An appropriate Order will be entered.

---

[1] The Court notes that the rental contract itself (D.I. 88, Ex. 1), which Defendants have attached to their Declaration of Susan M. Hannigan in Support of The Hertz Corporation and Dollar Thrifty's Rule 12(b)(7) Motion to Dismiss (D.I. 88), does not appear to be in dispute.