IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ENRICO MORETTI, an individual, on    )
behalf of himself, the general public and    )
those similarly situated,    )
   )
      Plaintiff,    )    C.A. No. 14-cv-469-LPS
   )
      v.    )
   )
THE HERTZ CORPORATION; DOLLAR    )
THRIFTY AUTOMOTIVE GROUP,    )
INC.; and HOTWIRE, INC.,    )
   )
      Defendants.    )
   )
   )

**BRIEF OF HERTZ AND DOLLAR THRIFTY
IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

RICHARDS LAYTON & FINGER
Raymond J. DiCamillo (#3188)
(dicamillo@rlf.com)
Susan M. Hannigan (#5342)
(Hannigan@rlf.com)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Fax: (302) 651-7701

JENNER & BLOCK LLP
Ross B. Bricker (admitted pro hac vice)
(rbricker@jenner.com)
John F. Ward, Jr. (admitted pro hac vice)
(jward@jenner.com)
353 N. Clark Street
Chicago, IL  60654
Telephone:  (312) 222-9350
Fax:  (312) 840-7711

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND FACTS .......................................................................................................2

1.  The Documents At Issue Are Possessed By Third Parties ........................................2

2.  Hertz and DTAG Have Limited Audit Rights ..........................................................3

3.  Discovery in Mexico Is Subject To Constraints Imposed By Mexican Law............5

4.  Moretti's Pending Requests Remain Broad ..............................................................6

ARGUMENT .........................................................................................................................7

I.  Hertz and DTAG Do Not "Control" the Documents of the Third-Party Mexican
    Franchisees...............................................................................................................7

    A.  Whether a Party Has Control over Documents Is a Case-Specific Inquiry .......8

    B.  Hertz's Audit Rights Do Not Establish Control Sufficient to Authorize
        Production. ..........................................................................................................9

    C.  Plaintiff's Request Implicates the Interests of Foreign Nations .......................12

II. Even If Hertz and DTAG Have Some Degree Of Control, Granting Plaintiff's Motion
    Would Undermine International Comity. ..................................................................13

    A.  Courts Evaluate Requests For The Production Of Foreign Documents In The
        Context Of International Comity. .......................................................................13

    B.  Plaintiff's Request for Production Undermines International Comity. ..............14

CONCLUSION......................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Agne v. Papa* John's *International, Inc.*,
2011 U.S. Dist. LEXIS 158503 (W.D. Wash. Dec. 20, 2011)................................................11

*Argonaut Ins. Co. v. Halvanon Ins. Co.*,
35 F. App'x 598 (9th Cir. 2002) ............................................................................................5

*Comas v. Schaefer*,
No. 10-04085-CV-C-FJG, 2010 WL 2927280 (W.D. Mo. July 21, 2010)...........................12

*Cradle IP LLC v. Texas Instruments, Inc.*,
No. 11-1254-SLR, 2013 WL 1794992 (D. Del. April 29, 2013).............................................9

*Gerling International Insurance Co. v. Commissioner*,
839 F.2d 131 (3d Cir. 1988)...............................................................................................8, 9

*Haskins v. First American Title Ins. Co.*,
2012 WL 51833908 (2012)...................................................................................................11

*Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*,
No. CV 15-819-LPS-CJB, 2016 WL 675553 (D. Del. Feb. 12, 2016)..................................11

*Lofton v. Verizon Wireless (Vaw) LLC*,
No. 13CV05665YGRJSC, 2014 WL 10965261 (N.D. Cal. Nov. 25, 2014) ..........................12

*Platypus Wear, Inc. v. Horizonte*,
2009 WL 10664824 (S.D. Fla. Aug. 6, 2009).......................................................................11

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*,
482 U.S. 522 (1987)........................................................................................................13, 14

OTHER AUTHORITIES

ABA INTERNATIONAL DISCOVERY, *Around the World in Ninety Minutes* (2008)
*available at*
http://www.mcmillan.ca/files/bharrison_aroundtheworldinninetyminutes.pdf ..................6, 16

AMERICAN BAR ASSOCIATION, *Business and Commercial Litigation in Federal Courts*, § 21:14 (2017)..............................................................................................................5

American Heritage Dictionary (5th ed. 2015) ............................................................................10

HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, *Central Authory(ies) [Mexico]*, last updated May 23, 2017, available at https://www.hcch.net/en/states/authorities/details3/?aid=508 ....................................................6

INT'L CIVIL PROCEDURE, *Mexico: Permitting/Taking Evidence Abroad* (2003) ............................5

INTERNATIONAL CIVIL PROCEDURE, *Mexico: Permitting/Taking Evidence Abroad* (2003) ....................................................................................................................................6

Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987) ..................................14, 15, 16

U.S. DEPARTMENT OF STATE, *Judicial Assistance Country Information [Mexico]*, last updated Oct. 19, 2017, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Mexico.html ........................................................................................................5, 6

U.S. DEPARTMENT OF STATE, *Preparation of Letters Rogatory*, available at https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html; ................................................................................................................6

Webster's New World College Dictionary (5th ed. 2016) ..........................................................10

Defendants The Hertz Corporation ("Hertz") and Dollar Thrifty Automotive Group ("Dollar Thrifty" or "DTAG") submit this brief in opposition to the motion of Plaintiff Enrico Moretti ("Moretti" or "Plaintiff") to compel Hertz and DTAG to produce documents Hertz and DTAG do not possess, do not have in their custody, and, as shown in this brief, do not control.

## INTRODUCTION

The substantive allegations in the case are well known to the Court. Plaintiff complains, in brief, that he was forced to pay additional charges for unwanted insurance services in order to rent a car in Mexico. Plaintiff also complains about foreign currency exchange fees charged in connection with his rental in Mexico. Plaintiff seeks to represent a class encompassing untold thousands of transactions in Mexico over the nine years that fall within the claims alleged in the complaint.

While Plaintiff has sued Hertz and Dollar Thrifty for various claims relating to the marketing of rental car services in the United States, the rental car transactions at issue involve neither Hertz nor Dollar Thrifty. The rental transactions that took place in Mexico were between Plaintiff and separate entities that are not defendants in this lawsuit. Alquiladora de Vehiculos Automotores, S.A. de C.V. ("Avasa") is a Mexican company that, by contract, has the right to operate as a Hertz licensee in Mexico. When a customer rents a car in Mexico under the Hertz label, the customer is renting from Avasa, which has licensed the right to use the Hertz name. Likewise, Garpa Arrenda S.A. de C.V. ("Garpa") is a separate Mexican entity that acquired the right to operate as the Dollar Thrifty brand licensee in Mexico. When a customer rents a Dollar Thrifty car in Mexico, the customer is actually renting from Garpa. Avasa and Garpa are not parties to this suit, nor are they subject to the jurisdiction of this Court.

In this motion, Plaintiff seeks documents of Avasa and Garpa. Plaintiff does so indirectly—Plaintiff does not seek documents from the entities in Mexico that possess them.

Instead, Plaintiff asks this Court to compel Hertz to obtain the relevant documents from Avasa and Garpa and produce them to Plaintiff in this litigation.

The motion should be denied.  Hertz and DTAG have but limited rights to audit Avasa and Garpa and are required to conduct those audits in Mexico.  Hertz and DTAG do not have broad, contractual rights to obtain the documents at issue and to produce them in this litigation.  Doing so would exceed Hertz's and DTAG's rights under their governing contracts.  It would also run roughshod over the procedures for transnational discovery involving documents in the possession of third parties located in a sovereign nation.

**BACKGROUND FACTS**

**1.      The Documents At Issue Are Possessed By Third Parties**

Avasa and Garpa have the contractual right to operate as licensees in Mexico of Hertz and DTAG, respectively.  (McCrary Decl.,[1] Ex. 23; McCrary Decl., Ex. 24.)  Despite their contractual ability to use the Hertz and DTAG trademarks, Avasa and Garpa are separate legal entities.  Hertz and DTAG do not own any interest in Avasa and Garpa, which are separate businesses organized under the laws of Mexico.  (*See* McCrary Decl., Ex. 23 at 28; McCrary Decl., Ex. 24 at 1.)  Plaintiff does not claim in his motion to compel that the Mexican entities are dominated by Hertz and DTAG.

Thus, there is no claim that the documents sought in the motion to compel are possessed by Hertz and DTAG, or are in the custody of Hertz and DTAG.  They plainly are not.  Instead, the only issue is whether Hertz and DTAG, by virtue of their contractual relationship with the Mexican entities, have control over the documents.  Plaintiff asserts that Hertz and DTAG control the

---

[1] Where possible, Hertz cites materials already in the record.  The "McCrary Declaration" is the declaration of counsel submitted in connection with Plaintiff's motion.

2

documents based on the ability of Hertz and DTAG to audit the Mexican entities. (Pl. Br. at 10-12.)  As shown in the following section, the right to audit is limited.

### 2.    Hertz and DTAG Have Limited Audit Rights

Hertz and DTAG have narrow rights to audit their Mexican licensees.  Those rights are circumscribed both in terms of where the audit is to take place – Mexico – and the purpose for the audit, which is to police and enforce the contractual relationship, not to make documents available to third parties in litigation.

The Hertz contract with Avasa provides that Hertz has a very limited right to audit.  Avasa is required:

> to allow representatives of International or Hertz, at any time during normal business hours, to inspect the premises, records, and vehicles of the Licensee used in operation as a Hertz System Licensee and to examine Licensee's records ascertaining and verifying the number of vehicles owned, leased, used or kept by the Licensee for use in Licensee's Vehicle Renting Business, the revenues therefrom and any—other information required by Hertz with respect to the Licensee's Vehicle Renting Business.

(McCrary Decl., Ex. 24 at 16-17.)  The audit provision is found within a contract which otherwise gives Hertz the right to make sure that it is being properly paid under the contract and to protect the value of its trademark as licensed to Avasa.  *See, e.g*., *id.* (requiring Licensee to "maintain the standard of quality in connection with the use of 'Hertz' name and trademark").[2]

Similarly, Garpa granted DTAG limited rights to inspect and audit Garpa's premises and records in order to protect Dollar Thrifty's trademark.  The contract between Garpa and DTAG

---

[2] Plaintiff also cites a separate provision, which Plaintiff asserts gives Hertz "the right to from time to time, and at any time, to retrieve data and information from Licensee's Computer System."  Pl. Br. 8, citing agreement at 32-33.  This statements is cited out of context.  It is part of a provision that permits Hertz to install dedicated computer equipment at Avasa to permit Hertz to obtain information needed for its business purposes.  Hertz has no system to transfer information in Mexico to Hertz in the United States. (McCrary Decl., Ex. 2, Barton Dep. at 278.)

requires Garpa to prepare and provide certain regular financial reports and records.  (McCrary Decl., Ex. 23 at § 205(K)(1).)  The contract also grants DTAG the following limited audit right:

> At any time during normal business hours, representatives of Licensor [DTAG] may inspect any Station in the Territory and the other business premises, Vehicles, books and records of Licensee and the books and records of the Owners and their Affiliates, which relate in any way to the Licensed Business, and may photograph or copy any parts thereof.  Should Licensee submit to Licensor any materially inaccurate or incomplete reports or financial statements, Licensor may terminate this Agreement as provided by Article 602.  With respect to reports of Gross Receipts, an understatement of two percent or more, and repeated understatements of lesser amounts, will be considered material.

(McCrary Decl., Ex. 23 at § 205(K)(5).)

In keeping with the limited rights permitted under these contractual provisions, Hertz and DTAG engaged in limited, infrequent audits of their Mexican licensees, at the licensee's premises in Mexico.  Robert Barton, a Hertz employee, testified that Hertz conducted an internal audit of Garpa's relationship with Dollar Thrifty, now owned by Hertz, in 2015 and concluded that Garpa owed additional sums to Hertz.  (McCrary Decl., Ex. 2, Barton Dep. at 15-16.)  The audit served the purpose reflected in the contract of permitting Hertz to determine whether Garpa was honoring its contractual obligation to pay royalties under the agreement.  (McCrary Decl., Ex. 23 at § 403(C).)  The audit was conducted on site at Garpa's location in Mexico. (McCrary Decl., Ex. 2, Barton Dep. at 16.)

Hertz conducted an audit of Avasa in November 2011.  (*Id.* at 286.)  It has not conducted an audit of Avasa since. (*Id*. at 290.)

Hertz's and DTAG's lack of control of the Mexican documents is seen in the fact that Hertz has no role in defining the financial records the Mexican subsidiaries maintain.  As Mr. Barton testified, Hertz and DTAG "don't maintain the financial records of a franchisee.   The franchisee reports his royalties to us. And if internal audit selects them as a candidate to audit, they have to be in a position to substantiate the royalties they paid us and the forms they submitted them on.

4

How they keep their financial records would be their business." (McCrary Decl., Ex. 2, Barton Dep. at 122.)

The Avasa and Garpa audits reflect the limited nature of the contractual relationship. Hertz has no system or process in place to transfer to the United States information that the Mexican licensees collect regarding individual consumer transactions. (*Id.* at 278.) That condition has been true for both Hertz and Dollar Thrifty from 2009 to the present. (*Id.*)

### 3.   Discovery in Mexico Is Subject To Constraints Imposed By Mexican Law.

Both the United States and Mexico are signatories to the Hague Convention and the Inter-American Convention on Letters Rogatory. Mexico accepts letters rogatory from U.S. parties for the purpose of collecting evidence in discovery for use in American courts, but regulates it to prevent discovery abuses and undue burden on Mexican businesses.[3]

Mexico signed the Hague Convention and the Inter-American (Panama) Convention on the Taking of Evidence Abroad. U.S. DEPARTMENT OF STATE, *Judicial Assistance Country Information [Mexico]*, last updated Oct. 19, 2017, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Mexico.html; INT'L CIVIL PROCEDURE, *Mexico: Permitting/Taking Evidence Abroad*, at § 5.4 (2003); *Argonaut Ins. Co. v. Halvanon Ins. Co.*, 35 F. App'x 598, 599 (9th Cir. 2002) (Inter-American Convention on Letters Rogatory "became effective in the United States in 1988. Mexico and the United States are signatories."); AMERICAN BAR ASSOCIATION, *Business and Commercial Litigation in Federal Courts*, § 21:14 (2017).

---

[3] Hertz hereby gives notice pursuant to Federal Rule of Civil Procedure 44.1 of its intention to raise an issue about a foreign country's law. As noted herein, Hertz relies on public sources. If the Court wishes, Hertz will provide a declaration of a foreign lawyer as to the matters stated.

These treaties permit litigants in the United States to request documents from Mexican business through letters rogatory to the General Director of Legal Matters at the Mexican Ministry of Foreign Affairs. U.S. DEPARTMENT OF STATE, *Preparation of Letters Rogatory*, available at https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html; U.S. DEPARTMENT OF STATE, *Judicial Assistance Country Information [Mexico]*, last updated Oct. 19, 2017, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Mexico.html; HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, *Central Authory(ies) [Mexico]*, last updated May 23, 2017, available at https://www.hcch.net/en/states/authorities/details3/?aid=508. "The Mexican judicial authority will assist the foreign court in accordance with the terms of the Convention, provided that the procedure requested is not expressly prohibited under Mexican law." INT'L CIVIL PROCEDURE, *Mexico: Permitting/Taking Evidence Abroad*, at § 5.4 (2003). The requests must be "reasonably identified as to date, contents, and other relevant information." *See* ABA INTERNATIONAL DISCOVERY, *Around the World in Ninety Minutes,* at 17 (2008) *available at* http://www.mcmillan.ca/files/bharrison_aroundtheworldinninetyminutes.pdf. Mexico will not issue a letter rogatory if the documents are only identified by "general characteristics." *Id.*

### 4.    Moretti's Pending Requests Remain Broad

The document requests, and this motion, seek to require Hertz and DTAG to obtain from the third-party Mexican licensees extensive and voluminous information over a nine-year period, from 2009 to the present. They seek extensive information, both at a general level and at a transactional level.

At a general level, the document requests seek all information related to currency exchange or currency conversion (Pl. Dec. 15, 2017 Discovery letter, Ex. 4, Request No. 30), prices charged

for insurance (*id*., Request No. 31), and how revenue is divided between Hertz and DTAG and the licensees during the nine-year period. (*Id.,* Requests No. 34 and 35.)

The requests also seek extensive information on a transaction-by-transaction basis.  For example, Requests No. 32 and 33 seeks all documents reflecting revenue received, shared, or divided, including how much was paid or received by each person in the United States who rented a car for pick up in Mexico.  (*Id*., Requests 32-33.)  Likewise, Request No. 37 seeks all documents relating to the amount of money received from each person who rented a rental car in Mexico during the relevant period.  (*Id*., Request 37.)

In short, the requests seek voluminous documents concerning each individual rental involving persons from the United States, over a nine-year period.  Demonstrating the breadth of the requests, Request No. 37 seeks all documents "relating to the amounts of money/revenue" collected from "each person who reserved a rental car for pick up in Mexico."  Request No. 39 seeks documents sufficient to identify each person in the United States who reserved and rented a car for pick up in Mexico during the relevant period. (*Id.*, Request 39.)  Request No. 40 seeks "all documents relating to all representations or statements" made to customers regarding the rental rate, currency exchange, or insurance. (*Id.,* Request 40.)

Thus, the requests seek Hertz to obtain from its licensees, using the guise of contractual audit provisions which exist for different purposes, every document concerning a nine-year period that relates to every transaction involving a United States customer.

## ARGUMENT

## I.     Hertz and DTAG Do Not "Control" the Documents of the Third-Party Mexican Franchisees.

Plaintiff does not suggest that Hertz or DTAG possess the documents at issue or have the documents in their custody.  To the contrary, the documents Plaintiff now seeks are exclusively

within the possession of Mexican corporations not party to this litigation.  Plaintiff argues that Hertz and DTAG control the Mexican licensees, and therefore must obtain the documents in Mexico and produce them in this litigation.  Plaintiff's argument overstates the actual nature of Hertz's and DTAG's right to obtain the documents and would fundamentally transform discovery in cases involving licensees or franchisees, and cases involving transnational discovery.

### A.       Whether a Party Has Control over Documents Is a Case-Specific Inquiry

The issue presented by this motion—whether Hertz and DTAG control the Mexican documents—depends upon the facts and circumstances of the relationships between Hertz and DTAG and the Mexican companies.  The Third Circuit has held that a party controls documents under the Federal Rules of Civil Procedure that the party has the "legal right to obtain the documents requested on demand."  *Gerling International Insurance Co. v. Commissioner*, 839 F.2d 131, 140 (3d Cir. 1988).  *Gerling*, cited by Plaintiff, demonstrates the fact-specific and limited nature of this inquiry.  In that case, a United States taxpayer company was sanctioned for not producing ownership information about a Swiss company.  The tax court found that a president of a United States entity, Gerling, had control over ownership information because he was also the president of the Swiss company.  The Third Circuit reversed.  Notwithstanding the fact that the same person was president of the United States entity and the Swiss company, it was error to sanction the United States entity without finding whether the information possessed by the president was possessed in his capacity as an agent for the  United States entity, or individually. The Court held that unless the taxpayer had "a legally enforceable right to secure this information" the information sought was not within its control.  *Id*. at 138.

In *Gerling* the tax court also sanctioned the taxpayer because the taxpayer arguably had the contractual right to obtain documents located in Switzerland in response to a request from the IRS, but it did not consent to the IRS's request to advise the Swiss government, which has protective

provisions regarding discovery of Swiss information, of the intended request for documents. *Id.* at 142. The Third Circuit reversed. The inspection provisions did not contemplate the taxpayer company performing an audit in Switzerland at the behest of an agent of a foreign nation, in this case the IRS, and therefore it was improper to sanction a party for failing to move forward over the objection of the party that actually possessed the audit right. *Id.*

While the exact factual situation present in *Gerling* is unusual, the case establishes that use of contractual provisions to compel discovery is limited by the precise provisions themselves and must respect the interests of all parties, including a foreign state which may have governmental interests in the protection of particular materials from discovery. *Id.* at 142-43.

The Third Circuit's approach to control is narrower than other circuits. Contrary to Plaintiff's argument, (Pl. Br. at 11), courts in this Circuit do not direct discovery based on a party's "practical ability" to obtain the documents. As another court in this district ruled, the Third Circuit Court has "declined to apply a broader definition of 'control' that would also include an inquiry into the practical ability of the subpoenaed party to obtain documents." *See Cradle IP LLC v. Texas Instruments, Inc.*, No. 11-1254-SLR, 2013 WL 1794992 at *1 (D. Del. April 29, 2013).

### B.    Hertz's Audit Rights Do Not Establish Control Sufficient to Authorize Production.

Plaintiff asserts that Hertz's and DTAG's rights to audit their Mexican licensees gives them control over the documents such that Hertz and DTAG must obtain the documents in Mexico, transport them to the United States, and produce them to Plaintiff in this litigation. To the contrary, Hertz's audit rights are limited such that they do not encompass the broad right to collection and production Plaintiff asserts.

By contract, the Mexican licensees are required to provide Hertz and DTAG with financial and operating reports. (McCrary Decl., Ex. 23 at § 205(K)(1).) If Hertz and DTAG wish to look

9

beyond those reports, Hertz and DTAG have the right to audit their Mexican licensees in Mexico. Under the contracts, they have the right to travel to Mexico to review the books and records of Avasa and Garpa in Mexico. (McCrary Decl., Ex. 23 at § 205(K)(5); McCrary Decl., Ex. 24 at 16-17.)   The license agreements do not give Hertz and DTAG an unfettered right to demand documents for production in the United States, even for the purposes set forth in the audit provisions.

Discovery has shown that when Hertz and DTAG have availed themselves of their audit rights, they have done so by travelling to Mexico and reviewing documents in the possession of Avasa and Garpa in those locations.  (McCrary Decl., Ex. 2, Barton Dep. at 16.).

In addition, Hertz's and DTAG's rights to audit are limited to the particular purposes set forth in the agreements.  The audit provisions speak of reviewing documents possessed by the Mexican entities to determine whether representations of sales volumes are correct, or to view facilities to make sure that the licensees have acted properly in protecting the value of Hertz's and Dollar Thrifty's trademarks.  (McCrary Decl., Ex. 23 at § 205(K)(5), 205(D)(3), 206(B)(1)-(5), 403(C); McCrary Decl., Ex. 24 at 16-17.) Not only are the audit provisions limited in geographic scope, they are also limited in purpose.[4]

The contracts do not grant Hertz and DTAG the right to obtain documents for their own business purposes, and certainly not for use in third-party litigation.  The demand that the Mexican

---

[4] This conclusion is supported by the common meaning of the word "audit."  An "audit" means "[a]n examination of records or financial accounts to check their accuracy." American Heritage Dictionary (5th ed. 2015). Webster's provides a similar definition: "a formal, often periodic examination and checking of accounts or financial records to verify their correctness."  Webster's New World College Dictionary (5th ed. 2016).  Thus, an audit is a process to test the accuracy of existing records or to spot-check records to verify their correctness.  It is not equivalent to a search warrant authorizing the wholesale collection and removal of documents for a different purpose.

licensees produce documents unrelated to a business purpose of Hertz, DTAG, or the Mexican licensees so that Hertz and DTAG could distribute them to Plaintiff in connection with this litigation, falls nowhere within the limited rights granted by contract.

Hertz's and DTAG's position is consistent with cases interpreting the rights to control granted in franchise agreements.  In *Agne v. Papa* John's *International, Inc.*, 2011 U.S. Dist. LEXIS 158503 (W.D. Wash. Dec. 20, 2011), a party sought information from a franchisor based on the franchisor's rights under a franchise agreement.  The Court denied the request, despite the fact that the "Papa John franchise agreements provide for broad corporate scrutiny of the franchisee's financial and accounting information." (*Id.* at 4.)  The Court held that the broad right of access did not include a legal right to demand the specific information at issue, and therefore the requested documents were not in the control of the franchisor.  *See Platypus Wear, Inc. v. Horizonte*, 2009 WL 10664824, at *1 (S.D. Fla. Aug. 6, 2009) (licensing agreement did not require the licensor "to obtain documents from third parties such as its licensee").

The cases on which Plaintiff relies do not lead to a contrary result. In *Haskins v. First American Title Ins. Co.*, 2012 WL 51833908 at *2-3 (2012), the parties' agreement contemplated that the defendant had rights to "access and use" all closing files of the third party without any limit to a specific purpose. The court found those precise documents to be within the control of the defendant.  In this case, the audit rights in the agreements with Garpa and Avasa are far narrower than Plaintiff's current requests. Plaintiff cites *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, No. CV 15-819-LPS-CJB, 2016 WL 675553 at *1 (D. Del. Feb. 12, 2016), but in that case, the issue of control was not in dispute between the parties – the parties agreed that the producing party had control over the subject documents.  The only issue was whether the contested documents were "equally accessible" to both parties. Demonstrating the case's inapplicability

11

here, the court stated "[i]t is not disputed that the documents, which currently remain in the possession of Medtronic, are under the 'control' of at least certain Plaintiffs for purposes of Federal Rule of Civil Procedure 34(a)." *Id.*

Other cases cited by Plaintiff as providing that contractual provisions permit a finding of control involved much broader contractual rights. In *Lofton v. Verizon Wireless (Vaw) LLC*, No. 13CV05665YGRJSC, 2014 WL 10965261 at *3 (N.D. Cal. Nov. 25, 2014), the contract explicitly provided for "'unrestricted' access to 'all information' regarding Verizon accounts 'at all times.'" In *Comas v. Schaefer*, No. 10-04085-CV-C-FJG, 2010 WL 2927280 at *1 (W.D. Mo. July 21, 2010), the court found control where a contract permitted one party access to all documents necessary to enforce any provision in the contract.  It is hard to imagine broader contractual rights. The audit rights in this case, in contrast, are limited to review in Mexico of particular documents and facilities.

Applying the Third Circuit's fact-specific test, which looks to the actual degree of control permitted by contract, Plaintiff has failed to sustain his burden of showing that the Mexican documents possessed by Avasa and Garpa are actually within the control of Hertz and DTAG.

### C.    Plaintiff's Request Implicates the Interests of Foreign Nations

The rule Plaintiff advocates—the contractual right to obtain documents for a limited purpose encompasses an obligation to obtain documents for purposes unrelated to the contractual obligation—would expand permissible discovery.  Documents that parties agreed could be reviewed or obtained for a limited business purpose would become discoverable in litigation, and thereafter could be produced and reproduced in a variety of proceedings.  Plaintiff's rule disregards the independent corporate identity between a licensor and a licensee, and essentially collapses those entities into one, without legal justification.

In the context of international discovery, where a party subject to process in United States litigation is required to obtain documents from an unaffiliated company overseas, the request for discovery implicates additional concerns in need of protection. Discovery in United States litigation is broader than discovery permitted elsewhere. Plaintiff's rule would run roughshod over the interests of other nations in protecting their citizens from discovery deemed improper under the law of those foreign nations. Plaintiff seeks to turn the limited audit right in the license agreement into a Trojan Horse to import expansive American civil discovery into other countries. To the extent Plaintiff seeks discovery that could not be obtained on a similar showing in Mexico, Plaintiff is necessarily violating the sovereign interest of Mexico and its citizens. If the discovery Plaintiff seeks is permissible under Mexican law, Plaintiff should avail itself of the opportunities for discovery afforded under the law of Mexico.

## II.     Even If Hertz and DTAG Have Some Degree Of Control, Granting Plaintiff's Motion Would Undermine International Comity.

Even if the Court agrees that Hertz and DTAG have some control of the documents at Avasa and Garpa, the motion to compel should nevertheless be denied. Granting the motion would undermine the comity owed to Mexico, as a sovereign state, and Plaintiff fails to show otherwise. In assessing these issues, courts apply a multi-factor test which weighs against the productions requested by Plaintiff and supports a finding that production is in appropriate.

### A.     Courts Evaluate Requests For The Production Of Foreign Documents In The Context Of International Comity.

Production of documents from foreign nations is ordinarily governed by international law, such as the Hague Convention. The Supreme Court ruled in 1987 that federal courts may but are not required to exercise their discretion to compel a party subject to the jurisdiction of a United States court to produce documents located abroad that are within the control of the United States party without the requesting party resorting to the requirements of the Hague Convention. *Societe*

13

*Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 522 (1987).  In *Societe Nationale*, however, the Court noted compelling any such production is only discretionary, and "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. . . . Objections to 'abusive' discovery that foreign litigants advance should therefore receive the most careful consideration." *Id.* at 546.

When another country's laws regarding discovery are inconsistent or conflicting with those of the United States, American courts apply a five-factor test to determine whether to compel production:

- "the importance to the investigation or litigation of the documents or other information requested;
- the degree of specificity of the request;
- whether the information originated in the United States;
- the availability of alternative means of securing the information; and
- the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located."

Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987) (formatting added); *see Aerospatiale*, 482 U.S. at 544 n. 28.

### B.    Plaintiff's Request for Production Undermines International Comity.

Even though the alleged conduct occurred in Mexico, by a Mexican business governed by Mexican law, Plaintiff brought this suit in a United States court.  Plaintiff has not attempted to utilize the Hague Convention to collect documents from these Mexican businesses. Plaintiff is attempting to make an end-run around the Mexican litigation rules, and thus international comity weighs heavily against their request for the production of these documents. Plaintiff does not

reference the five-factor test outlined in *Aerospatiale*. All but one of these factors weighs against compelling this production of documents.

The "degree of specificity of the request" weighs against the discovery plaintiff seeks. Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987). Here, the requests are overbroad, and not specific.  Plaintiff requests a broad swath of documents, including potentially every record of every transaction at the Mexican affiliates: Plaintiff seeks an order compelling Hertz and DTAG "to produce documents sufficient to identify who picked up their reserved rental cars, whether they purchased additional insurance or damage-waiver products; what form contracts they were provided; how much they paid; and the currency conversion rate applied to the transaction." (Pl. Br. at 8.) Because of the breadth of this request, the requests impose a major burden on a foreign entity, and this factor in the analysis weighs against Plaintiff.

Attention to "whether the information originated in the United States" also weighs against production.  Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987). Each of the records sought by Plaintiff originated in Mexico. The customers signed the agreements in Mexico, made use of the vehicles in Mexico, and received their receipts in Mexico. Records of these transactions were made by Mexican licensees, and stored in the ordinary course of business in Mexico. Thus, this factor in this analysis weighs against Plaintiff.

Looking to "the availability of alternative means of securing the information" also weighs against production.  Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987). Plaintiff has the available alternative of sending letters rogatory through the procedures established by the Hague Convention.  Thus, Plaintiff has an alternative means to obtain this discovery, but seeks to evade the Hague Convention, which weighs heavily against Plaintiff.

Finally, Plaintiff's requests are not supported by weighing the interests of the United States and the foreign country, determining "the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." Restatement (Third) of Foreign Relations Law § 442(1)(c) (1987). The interest of the United States is its ability to conduct litigation regarding U.S. citizens. But this interest is not impeded by denying this discovery request because Plaintiff could utilize the process identified in the Hague Convention to pursue the sought documents. The interest of Mexico, on the other hand, is to protect its businesses from intrusive and burdensome foreign discovery. Under the applicable procedures, the Mexican government plays an active role in determining the scope of document requests to serve its objective of reducing the burden on its nationals of discovery. For example, letters rogatory must be submitted to Ministry of Foreign Affairs or its judicial authorities so that the Mexican government can vet the proposed requests to prevent Mexican businesses from being subject to extraneous or unduly burdensome requests. *See* ABA INTERNATIONAL DISCOVERY, *Around the World in Ninety Minutes,* at 17 (2008) *available at* http://www.mcmillan.ca/files/bharrison_aroundtheworldinninetyminutes.pdf. Garpa and Avasa are incorporated in Mexico and do business there. They license the brand of a company located in the United States. Thus, Mexico has a strong interest in protecting its businesses from unduly burdensome litigation. On balance, the interests of Mexico outweigh the interests of the United States in regards to the burden placed on these Mexican non-parties.

The only factor that arguably supports production is whether the documents Plaintiff seeks are essential for the litigation. Opposing counsel has represented that these documents are important to the litigation, although not important enough for Plaintiff to pursue a letter rogatory.

16

The Hague Convention was signed by both the United States and Mexico for the purpose of facilitating such discovery requests.  As the remainder of the factors weigh heavily against compelling production, and Plaintiff could pursue the same documents through a different procedure, in the interest of upholding international comity, this Court should refuse to compel the production of these documents.

## CONCLUSION

For the foregoing reasons, Hertz and Dollar Thrifty respectfully request the Court to deny Plaintiff's motion to compel.

Respectfully submitted,

THE HERTZ CORPORATION and DOLLAR THRIFTY AUTOMOTIVE GROUP, INC.

OF COUNSEL:

Ross B. Bricker (admitted pro hac vice)
John F. Ward, Jr. (admitted pro hac vice)
JENNER & BLOCK, LLP
353 N. Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
Fax: (312) 840-7711
rbricker@jenner.com
jward@jenner.com

*/s/ Susan M. Hannigan*
Raymond J. DiCamillo (#3188)
Susan M. Hannigan (#5342)
RICHARDS, LAYTON &FINGER, P.A.
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Fax: (302) 651-7701
dicamillo@rlf.com
hannigan@rlf.com

*Attorneys for The Hertz Corporation and Dollar Thrifty Automotive Group, Inc.*

Dated: February 26, 2017

17