# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENRICO MORETTI, individually and on behalf of Class Members, | : : : |
| Plaintiff, | : : |
| v. | : C.A. No. 14-469-LPS : |
| THE HERTZ CORPORATION, DOLLAR THRIFTY AUTOMOTIVE GROUP, INC., and HOTWIRE, INC., | : : : : |
| Defendants. | : |

## MEMORANDUM ORDER

Presently before the Court is Plaintiff Enrico Moretti's ("Plaintiff") motion to compel production of documents by Defendants, the Hertz Corporation ("Hertz") and Dollar Thrifty Automotive Group, Inc. ("DTAG") (collectively "Defendants"). (D.I. 179) For the reasons that follow, the Court will grant Plaintiff's Motion.

Plaintiff alleges that he was forced to pay for unwanted insurance services and charged an inflated foreign currency exchange rate when he went to pick up his rental car, which he had previously reserved online while in the United States, upon arrival in Mexico for a vacation. Plaintiff alleges he was made to pay several hundred dollars more than what he had been quoted as the final price when he had made the original online reservation. Plaintiff asserts that these practices – forcing customers to purchase insurance and using inflated exchange rates – were widespread and seeks to represent a class encompassing many thousands of rental car transactions in Mexico over a nine-year period. The relevant rental car companies in Mexico are

1

operated by DTAG's Mexican licensee, Garpa Arrenda S.A. ("Garpa"), and Hertz's Mexican licensee, Alquiladora de Vehiculos Automotores, S.A. de C.V. ("Avasa" and, collectively with Garpa, "Licensees").  Plaintiff seeks an order compelling Defendants "to produce documents sufficient to identify who picked up their reserved rental cars in Mexico; what contract forms they signed; whether they purchased additional insurance or damage-waiver products; how much they paid; and the currency conversion rate applied to the transaction." (D.I. 180 at 2)

Federal Rule of Civil Procedure 34 ("Rule 34") allows "[a] party . . . [to] serve on any other party a request . . . to produce . . . in the responding party's possession, custody or control . . . any designated documents . . . ."  "In the absence of control by a litigating corporation over documents in the physical possession of another corporation, the litigating corporation has no duty to produce." *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 140 (3d Cir. 1988). "In the context of Fed. R. Civ. P. 34(a), so long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control." *Mercy Catholic Med. Ctr. v. Thompson*, 380 F.3d 142, 160 (3d Cir. 2004).

The parties' primary dispute is whether Defendants have "control" over the documents Plaintiff seeks, as those documents are in the possession and custody of their Licensees in Mexico.  Plaintiff argues that the inspection provisions in the contracts between Defendants and their respective Licensees are sufficient to establish control under Rule 34. (D.I. 180 at 2) Defendants insist that they do not have control over the requested documents because, in their view, the contracts provide only limited rights to audit the documents at their Licensee's locations in Mexico and to do so for limited purposes – purposes which do not include making those documents available to third parties for litigation in the United States. (D.I. 186 at 3)

The Court agrees with Plaintiff. Defendants have control over the disputed documents under Rule 34 and, thus, are required to produce those documents in this litigation. The record further establishes that Defendants have the practical ability to obtain these documents. Defendants' arguments for a contrary conclusion are unpersuasive.

A contractual right to obtain documents in the possession of a third party can constitute control for Rule 34 purposes. *See, e.g.*, *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, 2016 WL 675553, at *1 (D. Del. Feb. 12, 2016) (stock purchase agreement with third party provided requisite control); *Lofton v. Verizon Wireless (Vaw) LLC*, 2014 WL 10965261, at *1 (N.D. Cal. Nov. 25, 2014) (audit provisions in vendor contracts provided control over third party's documents); *Haskins v. First Am. Title Ins. Co.*, 2012 WL 5183908, at *2 (D.N.J. Oct. 18, 2012) (contracts provided control over and access to third party agents' files).

Contrary to Defendants' arguments, the relevant contractual provisions governing Defendants' access to documents in the physical custody of their Licensees do provide Defendants "the legal right or ability to obtain the documents . . . upon demand." *Mercy Catholic*, 380 F.3d at 160.

The contract between Hertz and Avasa states in relevant part:

> To allow representatives of International or Hertz, at any time during normal business hours, ***to inspect*** the premises, ***records***, and vehicles of the Licensee used in operation as a Hertz System Licensee ***and to examine Licensee's records ascertaining and verifying*** the number of vehicles owned, leased, used or kept by the Licensee for use in Licensee's Vehicle Renting Business, the revenues therefrom ***and any - other information required by Hertz with respect to the Licensee's Vehicle Renting Business***.

(D.I. 181-24 Ex. 24 at pp. 18-19 of 79) (emphasis added)  Thus, as the plain language of the agreement shows, Hertz has the right "to inspect" and "to examine" Avasa's "records" and "any other information required by Hertz with respect to the" business Avasa engages in with Hertz.

Similarly, the contract between DTAG and Garpa states in relevant part:

> At any time during normal business hours, representatives of Licensor may *inspect* any Station in the Territory and the other business premises, Vehicles, *books and records* of Licensee and the books and records of the Owners and their Affiliates, *which relate in any way to the Licensed Business, and may photograph or copy any parts thereof*.

(D.I. 181-24 § 205(K)(5)) (emphasis added)  Thus, as the plain language of this agreement shows, DTAG has the right to "inspect" Garpa's "books and records" "which relate in any way to the Licensed Business."

The documents Plaintiff seeks – records showing customers who used rental cars, any rental insurance bought, any contracts signed, the amount paid, and the currency conversion rate used – relate to the operation of the rental business by the Licensees and, thus, are within the scope of these contractual provisions.

In the Court's view, these provisions are sufficient to establish that Defendants do have "control," as that term is used in Rule 34, over the documents in the possession and custody of the Licensees. *See Lofton*, 2014 WL 10965261, at *1 (contract providing that "Verizon, through its authorized representatives, shall have the right, at all times, to examine and audit records, to include, but not be limited to, copies of" certain documents was sufficient to show control under Rule 34); *Haskins*, 2012 WL 5183908, at *2 (contract provision requiring third-party agents to "make all Documentation available for inspection and examination by First American at any reasonable time upon request by First American" establishes control under Rule 34).  Like the

4

provisions in *Lofton* and *Haskins*, the plain language of the provisions at issue here allows Defendants access to any of the Licensees' documents related to the operation of the rental vehicle business, contrary to Defendants' assertion that the contracts are limited in purpose. (*See* D.I. 186 at 10)

Defendants make many arguments against the Court's conclusion, some specific to the particular contracts they have with the Licensees, others more generally relating to Circuit, District, and international law. The Court has evaluated each of Defendants' multitude of arguments and has concluded that each, ultimately, is unavailing.

Defendants argue that the contracts are limited in geographic scope, that is, the contracts only give them "the right to travel to Mexico to review the books and records of Avasa and Garpa in Mexico," and not an "unfettered right to demand documents for production in the United States." (D.I. 186 at 10) However, the "location of the documents . . . is irrelevant" to the issue of control. *Gerling*, 839 F.2d at 140. Moreover, Defendants have not provided any evidence to show that it would be too burdensome to obtain the documents from Mexico, assuming other ways to obtain it do not exist or otherwise not practical.[1]

---

[1] Although not established in the record, it may turn out that a substantial proportion of the materials being ordered to be produced are stored in an electronic database and could be relatively easily produced. It is also notable that the record is devoid of any showing that the third parties themselves refuse to or are even reluctant to produce the requested materials. (*See* D.I. 190 at 18) (April 12, 2018 oral argument: "Court: So when we spoke about this, I think it was December [2017], you all had not even asked the third parties if they would be willing to, whatever degree of burden it would be, just give you what is requested by the plaintiffs. [Defendants' Counsel]: That is still true.") To the contrary, the record includes a letter from Garpa to Hertz DTAG which includes this statement: "We believe we can be helpful in the defense of the Moretti litigation." (D.I. 181 Ex. 25 at 3) At bottom, Defendants have failed to make any showing – beyond attorney rhetoric – that compliance with the Court's order will be at all problematic.

Defendants' contend that their rights "are limited to the particular purposes set forth in the agreements" and that those purposes are essentially to "audit," a term which Defendants claim means only to check the accuracy of financial documents. (D.I. 186 at 10) However, as Plaintiff points out (*see* D.I. 187 at 5), the word "audit" appears nowhere in either of the license agreements. More importantly, Defendants' interpretation of the contractual language is simply incorrect. Both Defendants have the contractual right (and the practical ability) to obtain the documents requested by Plaintiff and to produce them in this litigation, in order to comply with their discovery obligations. The Court also agrees with Plaintiff that "none of the cases Plaintiff cited finding control analyzed whether the contract mentioned litigation." (D.I. 187 at 7)

Defendants argue that Plaintiff's document requests are overly broad, seeking "every document concerning a nine-year period that relates to every transaction involving a United States customer." (D.I. 186 at 7) The Court disagrees. Instead, Plaintiff's request is properly tailored, as it is limited to "documents sufficient to identify who picked up their reserved rental cars in Mexico; what contract forms they signed; whether they purchased additional insurance or damage-waiver products; how much they paid; and the currency conversion rate applied to the transaction." (D.I. 180 at 2) Defendants have not shown this request is disproportionate to the needs of the case or that compliance would be unduly burdensome.

Defendants suggest that Plaintiff's contention is that the Licensees are agents of Defendants for all purposes. (*See* D.I. 186 at 7-8, 10-12) This is a misinterpretation of Plaintiff's position, which is only that Defendants – as part of the voluntary contractual relationship they entered into with the Licensees – have a contractual right to obtain the documents requested by Plaintiff, including for the purpose of complying with Defendants' discovery obligations in this

6

litigation. The rights the Court is ordering Defendants to exercise arise from contract, not from any purportedly broader principle-agent relationship. *See generally McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 78 (D.D.C. 1999) ("[W]hile the control required for Rule 34 purposes may be established by virtue of a principal-agent relationship, a Rule 34 request only requires a showing of control, not proof of a principal-agent relationship.").

Defendants rely heavily on the Third Circuit's decision in *Gerling*, which they contend "establishes that use of contractual provisions to compel discovery is limited by the precise provisions themselves and must respect the interests of all parties, including a foreign state which may have governmental interests in the protection of particular materials from discovery." (D.I. 186 at 9) *Gerling*, however, is not dispositive. As Defendants themselves acknowledge, it presented "unusual" circumstances. (*Id.*)

In *Gerling*, the Third Circuit reversed a Tax Court's order imposing sanctions on GIIC, a United States corporation, for failing to produce ownership information about Universale, a Swiss corporation, where the same person was a stockholder of both GIIC and Universale. *See Gerling*, 839 F.2d at 133, 135, 136. The Commissioner of Internal Revenue ("IRS") had moved for sanctions in the Tax Court when GIIC declared that it was unable to produce the books and records of Universale in the U.S. for IRS inspection. *See id.* at 136. While Universale agreed to allow a U.S. accounting firm with an office in Switzerland, selected and paid for by the IRS, to audit its books and records and provide the results to the IRS, it refused the IRS' request that the Swiss government be informed of the audit, a request the IRS made to avoid any violation of Swiss laws, which prohibits unauthorized actions taken on behalf of a foreign nation within Switzerland. *Id.*

In this unique context, the Third Circuit reversed the Tax Court's sanctions order. Although the primary reason for the reversal rested on different grounds,[2] the Third Circuit also considered the Tax Court's reliance on the contract between the corporations in imposing sanctions. *See id.* at 142 ("While not relied upon by the IRS, the Tax Court found some support for holding GIIC accountable for its failure to produce Universale's books and records in the contractual arrangement between the two corporations."). The contract provided GIIC "the right to inspect Universale's books at its office in Switzerland or to have an authorized agent make such an inspection." *Id.* But the Third Circuit was "unwilling to hold that GIIC was subject to sanction for failing to exercise its contractual right of access to Universale's books and records." *Id.*

To the Third Circuit, the "obvious purpose of this provision" was to ensure GIIC had received its proper share of revenues from 20% of Universale's business, so "it [was] highly unlikely that a Swiss court would find that the parties, in reaching this agreement, contemplated an audit on Swiss soil by an agency of a foreign power." *Id.* Those concerns are absent here. Requiring Defendants to obtain business records from their Mexican Licensees, which Defendants have done themselves in past audits, based on the licensing agreements, does not raise questions about how a Mexican court might interpret the agreement or actions by a foreign nation on Mexican soil.

---

[2] Because there was no evidence that the U.S. and Swiss corporations at issue were under common control, that their separate corporate identities had been disregarded, or that GIIC had acted for the benefit of Universale, the Third Circuit "conclude[d] that there was no foundation for the Tax Court's conclusion that GIIC had sufficient control over Universale to require production of its books and records in the United States." *Gerling*, 839 F.2d at 141.

8

Defendants also argue that their "position is consistent with cases interpreting the right to control in franchise agreements." (D.I. 186 at 11) The cases Defendants rely on are distinguishable. In *Agne v. Papa John's Int'l, Inc.*, 2011 U.S. Dist. LEXIS 158503, at *7 (W.D. Wash. Dec. 20, 2011), the court concluded that Defendant did not have the legal right to obtain the information Plaintiff was demanding under Rule 34 because the information sought ("text message marketing initiatives of [Defendant's] franchisees") was outside the scope of the franchise agreements, which only "provid[ed] for broad corporate scrutiny of the franchisees' financial and accounting information." In *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao e Exportacao Ltda.*, 2009 WL 10664824, at *1 (S.D. Fla. Aug. 6, 2009), the court concluded that "Platypus Wear, Inc. is not required to obtain documents from third parties such as its licensee," but there is no discussion by the court of any contractual provisions underlying its conclusion.

Defendants contend that no other Court in this District has adopted the broad proposition Plaintiff urges on this Court. (*See, e.g.*, D.I. 186 at 9) (citing *Cradle IP LLC v. Texas Instruments, Inc.*, 2013 WL 1794992, at *1 (D. Del. Apr. 29, 2013) (stating Third Circuit "declined to apply a broader definition of 'control' that would also include an inquiry into the practical ability of the subpoenaed party to obtain documents")) But there is some support in this District for the Court's decision today. *See, e.g.*, *Integra LifeSciences*, 2016 WL 675553, at *2. More importantly, there is no binding precedent that precludes this Court's determination. The Court perceives no inconsistency between its holding today and, for example, the Third Circuit's holding in *Mercy Catholic*, 380 F.3d at 160, that, for purposes of compliance with Rule 34, "control" exists wherever a party "has the legal right or ability to obtain the documents from

9

another source upon demand." *See generally In re: Benicar (Olmesartan) Prod. Liab. Litig.*, 2016 WL 5817262, at *6 (D.N.J. Oct. 4, 2016) ("Courts within the Third Circuit have broadly interpreted 'control' in the context of document production."); *Haskins*, 2012 WL 5183908, at *1 ("Federal courts construe 'control' very broadly for Rule 34 purposes."). While reasonable minds may certainly disagree, the Court has given the matter careful consideration – and received the benefit of extensive briefing (*see, e.g.*, D.I. 170-72, 174, 180-81, 186-87) and oral argument (*see, e.g.*, D.I. 190) – and has made what it believes is the correct decision. *See also generally Shcerbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[I]f a party has access and the practical ability to possess documents not available to the party seeking them, production may be required.").

Defendants forecast that the Court's ruling will somehow lead to tumultuous consequences. They write that granting the motion will "fundamentally transform discovery in cases involving licensees or franchisees," "run roughshod over the procedures for transnational discovery involving documents in the possession of third parties located in a sovereign nation," and further "run roughshod over the interests of other nations in protecting their citizens from discovery deemed improper under the law of those foreign nations." (D.I. 186 at 2, 8, 13)[3] The

---

[3]*See also* D.I. 186 at 12:

> The rule Plaintiff advocates – the contractual right to obtain documents for a limited purpose encompasses an obligation to obtain documents for purposes unrelated to the contractual obligation – would expand permissible discovery. Documents that parties agreed could be reviewed or obtained for a limited business purpose would become discoverable in litigation, and thereafter could be produced and reproduced in a variety of proceedings. Plaintiff's rule disregards the independent corporate identity between a licensor and a licensee, and essentially collapses those

Court is skeptical that the application of the Court's understanding of "control" to the precise language of two contractual provisions – within the context of a purported class action based on allegations of widespread fraud perpetrated against U.S. citizens, where Defendants have previously exercised the very contractual rights Plaintiff asks them to exercise again,[4] where Defendants acknowledge the third parties have the requested documents (*see, e.g.*, D.I. 186 at 2-5) (citing record), and there is no record indication that the third parties actually oppose producing the requested documents – will have the impact Defendants portend. In any event, the Court must make the best decision it can based on the facts and the law before it, and that this is what the Court has strived to do.

Defendants emphasize considerations of international comity, contending that "[g]ranting the motion would undermine the comity owed to Mexico, as a sovereign state." (D.I. 186 at 13-17) To Defendants, "Plaintiff is attempting to make an end-run around the Mexican litigation rules, and thus international comity weighs heavily against their request for the production of these documents." (*Id.* at 14) The Court is not unconcerned by these points. However, they do not warrant denying the motion. It was not the Plaintiff, nor the Court, who chose to enter into business with Licensees in Mexico – it was the Defendants. It was also the Defendants who bargained for and obtained what the Court has construed to be a clear contractual right to obtain the documents that are plainly relevant to litigation pending before this Court. In this context,

---

entities into one, without legal justification.

(D.I. 186 at 12)

[4] *See* D.I. 187 at 2 (Plaintiff: "Hertz DTAG concedes that it has conducted inspections of both Mexican licensees relating to the very issues in this lawsuit . . . .").

11

Plaintiff has the right to ask the Court to compel Defendants to comply with their discovery obligations, and that is what the Court is doing: issuing an order directed at **Defendants**.

Relatedly, Defendants rely on the Supreme Court's decision in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa*, 482 U.S. 522, 541-46 (1987), contending that the factors outlined there should strongly dissuade the Court from exercising its discretion to grant the relief sought by Plaintiff. (*See, e.g.*, D.I. 186 at 13-15) To the extent *Societe Nationale* is relevant, the Court finds that the applicable factors, on the whole, support the Court using its authority to enforce Plaintiff's right to obtain discovery authorized under the Rules of Civil Procedure.[5] The (1) discovery sought is highly "important[] to the . . . litigation," particularly relating to issues of class certification;[6] (2) the document requests are sufficiently

---

[5]As Defendants' recognize (*see* D.I. 186 at 14), in *Societe Nationale* the Supreme Court wrote of "protect[ing] foreign litigants" from unnecessary and unduly burdensome discovery, requiring courts to give "the most careful consideration" to objections "that foreign litigants advance." 482 U.S. at 546. Notably, here, no "foreign litigant" has objected to discovery, either by appearing or by making its views known through a party. (Defendants assert that Plaintiff's requests "impose a major burden on a foreign entity" (D.I. 186 at 15) but there is no record support for this contention.) Nor has Plaintiff sought discovery from a foreign party – instead, it is seeking an order requiring domestic Defendants to comply with their discovery obligations, which here requires Defendants to exercise their rights vis-a-vis foreign Licensees.

[6]As Plaintiff summarizes his allegations:

> This suit involves false and misleading disclosures on U.S.-based websites run by the Defendants, who are U.S.-based companies. The plaintiff is a U.S. citizen who, while in the U.S., was defrauded into making an online rental reservation. The proposed class consists entirely of similarly situated U.S. citizens. The Defendants profited from that fraud.

(D.I. 187 at 1) It is undisputed that, in order to obtain class certification, Plaintiff will have to "establish that class members can be ascertained and that damages can be proven on a classwide basis." (D.I. 180 at 19) It follows that "discovery should be sufficiently broad to give the plaintiffs a fair and realistic opportunity to obtain evidence which will meet the requirements of

specific; (3) the information partly originated in the United States, when Defendants' customers made their rental car reservations; (4) while there may be other means of securing the information – by following the procedures of the Hague Convention – those other means appear to be more cumbersome than directly seeking from Defendants documents that, the Court agrees, are within their control;[7] and (5) noncompliance with the request would undermine the important interests of the United States in resolving this litigation – which involves serious allegations of widespread consumer fraud perpetrated on U.S. citizens – on the merits, with each party having its full and fair rights under our rules of discovery.

Finally, Defendants acknowledge that they have obtained business-related documents from their Licensees during audits conducted in the past. (*See* D.I. 186 at 4) The record clearly demonstrates that Defendants have been able to obtain pertinent business records from their Licensees upon demand. Therefore, in addition to having "control" over the documents Plaintiff seeks, Defendants have the "practical ability" to obtain them from the Licensees as well.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion to compel (D.I. 179) is **GRANTED**.

September 30, 2018  HONORABLE LEONARD P. STARK
Wilmington, Delaware  UNITED STATES DISTRICT JUDGE

---

Rule 23, but not so broad as to present an undue burden on the defendant." *Wahl v. Am. Sec. Ins. Co.*, 2009 WL 3463211, at *1 (N.D. Cal. Oct. 23, 2009).

[7]*See Societe Nationale*, 482 U.S. at 541 ("[I]t appears clear to us that the ***optional*** [Hague] Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention. Although these procedures are ***not mandatory*** . . . it is one method of seeking evidence that a court ***may*** elect to employ.") (emphasis added).